[Civ. No. 2979. First Appellate District, Division One.—December 2, 1919.]

J. H. MILES, Plaintiff and Respondent; W. I. HOLLINGS-WORTH et al., Intervenors and Respondents, v. WESLEY CLARK et al., Defendants and Appellants; R. E. WELLS et al., Defendants and Respondents.

[1] BUILDING RESTRICTIONS—ACTION TO ESTABLISH—EVIDENCE—FIND-INGS.—In this action brought under the provisions of section 738 of the Code of Civil Procedure to establish an estate or easement claimed to be owned by plaintiff and intervenors in all the property embraced within a certain tract of land, the evidence, consisting of contracts of sale, deeds, statements to purchasers, advertisements, and announcements of the defendants, was sufficient to support the finding of the trial court that the restrictions and building scheme upon which the plaintiff and intervenors based their claim were fully established, and were made binding upon every lot in the tract.

[2] ID.—COVENANTS RUNNING WITH THE LAND.—Restrictive covenants inserted in deeds as part of a general building scheme affecting a whole tract and expressly made binding on every lot in the tract for the benefit of every owner run with the land for the benefit of other lots in the tract.

[3] ID.—LIMITATION OF TITLE OF GRANTOR TO REMAINDER OF TRACT.—Where the first deeds executed by the owners of the entire tract contained restrictive covenants which were made effective against every lot in the tract, they limited their title to that extent, and established the restrictions set forth as appurtenant to the entire tract, and they could not thereafter convey a greater title than they had.

<hr/>

1. Building restrictions generally, note, 95 Am. St. Rep. 219.

[4] ID.—CONSTRUCTIVE NOTICE TO SUBSEQUENT PURCHASERS.—Purchasers of lots in a tract which are subject to a general building scheme are charged with notice of the existence of such scheme and that the tract is burdened with certain easements for the benefit of other lots in the tract, though they do not deraign title through a deed containing the restrictions, where they deraign title through the common grantors who created the restrictions and purchased by reference to a map on file which indicated the existence of a building scheme, and the general appearance and character of the tract and the nature of the improvements thereon were such as to indicate the presence of some character of restrictions.

[5] ID.—CHANGED CONDITIONS OF NEIGHBORHOOD—REMOVAL OF RESTRICTIONS.—The fact that apart from and surrounding a tract which has been restricted in the use thereof to residence purposes some business has grown up, and that the restricted land has become more valuable in consequence, will not entitle the owners of the unsold portion of the original tract to be relieved of the restrictions they created.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Hunsaker & Britt, Edwin A. Meserve, Shirley E. Meserve, Gibson, Dunn & Crutcher, Hunsaker, Britt & Edwards and W. E. Mitchell for Appellants.

Leon F. Moss for Plaintiff and Intervenors, Respondents.

No appearance for Defendants and Respondents.

KERRIGAN, J.—This is an action brought under the provisions of section 738 of the Code of Civil Procedure to establish an estate or easement claimed to be owned by plaintiff and intervenors in all the property embraced within a certain tract of land situated in the city of Los Angeles and known as Westmoreland Place. The claim is made by virtue of, and to the extent of, certain building restrictions alleged to have been established by defendants Wesley Clark, E. P.

4. Right of purchaser of property to enforce common restriction against another purchaser, notes, 14 Ann. Cas. 1021; Ann. Cas. 1913E, 822.

Bryan, and the Huntington Land and Improvement Company, which restrictions, it is claimed, were made binding on and appurtenant to every lot in said tract. Injunctive relief was also sought to restrain the defendants from maintaining on said tract certain structures consisting of large signboards which, it is alleged, are greatly offensive to the sight, and the maintenance of which constitutes a breach of the claimed restrictions.

The record in the case is ·voluminous, the pleadings alone occupying more than four hundred pages of the transcript. Such of the facts as are necessary for a discussion of the case are in substance as follows:

In 1894 defendants Wesley Clark and E. P. Bryan were partners in the real estate business in the city of Los Angeles. About that time one Ballerino owned a quarter-section of land adjoining the then Los Angeles city limits, and Clark and Bryan purchased fifty acres of this property, which they subdivided and platted as Clark & Bryan's Lone Star Tract, and from time to time sold lots therein. They subsequently, with Henry E. Huntington, purchased the remaining 110 acres owned by Ballerino, which they divided into three additional tracts. These tracts were designated, respectively, Clark & Bryan's Westmoreland Tract, Clark & Bryan's Bungalow Row, and Clark & Bryan's Westmoreland Place. Huntington, Clark, and Bryan each owned an undivided one-third interest in the tracts, the title to which, however, stood of record in the names of Wesley Clark and E. P. Bryan. This action concerns only the tract designated as Westmoreland Place, and this subdivision contains approximately forty-one acres.

Immediately after the purchase of the land the work of grading and improving the streets and sidewalks was entered upon in all three of these subdivisions, and Clark & Bryan thereupon began an active selling campaign in disposing of the lots in the Westmoreland Tract and Bungalow Row. No special effort was made by them to effect sales in Westmoreland Place, it being their intention to reserve the lots in this tract until after they had completed the sale of the lots in the other subdivisions. A map of Westmoreland Place was, however, prepared in 1902, but it was not filed until December, 1904. This map shows a division of this tract into large lots, sixty-five in number, the minimum size of which is

one hundred feet frontage by two hundred feet in depth. Two of them have frontages of 175 feet and three of 150 feet. All of the lots face on private streets within the tract. On one side thereof high and ornamental fences and walls have been constructed on the street frontages adjoining the tract, with massive, ornamental gate entrances on those streets. The roads of the tract are graded and macadamized, cement curbs and sidewalks are constructed, and an attractive lighting system has been installed; parking spaces between the curbs and sidewalks are laid out, and the lots themselves are planted with palms and ornamental trees. Private roadways are inclosed by means of chains, and altogether the tract as shown by the exhibits presents a handsome and exclusive subdivision upon which costly and palatial residences have been erected.

The complaint alleges and the court found that the defendants designed this tract and offered the same for sale in lots to be used exclusively as first-class residence property, and that certain conditions, limitations, reservations, and restrictions and covenants were established, to apply to the entire tract, in order forever to restrict the property for and as exclusive first-class residence property, and to restrict the use thereof to and for the purpose expressed. It is also alleged and found by the court that the tract as so improved was and is of great beauty and distinction, except as the same is impaired by signboards erected thereon by defendants; that it is conveniently located in the city of Los Angeles, and well adapted to and for the purpose for which it was designed.

It is further alleged and found that immediately after the filing of the plat defendants placed the lots on the market for sale subject to certain conditions, limitations, reservations, restrictions, and covenants in, to, and concerning each and all the lots and the title thereto, and that prior to the sale of any of the lots defendants established certain restrictive covenants, and sold and conveyed lots in conformity therewith. The restrictions alleged and established by the plaintiff are as follows:

"1. That each and every lot and parcel of land included in said tract shall be used for residence purposes exclusively; that no building or structure pertaining to or for the con-

duct of business of any kind whatsoever shall ever be erected thereon.

2. That no residence of less than two full stories above the basement shall ever be erected or placed upon said premises, and that no residence shall be erected or placed upon said premises that shall cost less than fifteen thousand dollars.

3. That any residence to be built upon said premises shall front upon the private driveways shown upon said plat, and that the front line of such residence, including porch or piazza, but not including front steps, shall be placed on a line sixty feet from the front line of said property; that said front line of said property shall be considered to be nineteen feet from the outside of the street curb; that no building shall ever be placed on said premises nearer to said front line of said property than said designated line.

4. That no fence or wall on the side line of any lot or parcel of land situated in said tract in front of said house line shall ever be built or placed of a greater height than four feet from the ground.

5. That no more than one residence shall ever be erected or placed or allowed to be upon any lot in said tract.

6. That no double house or tenement house, that no flat nor any kind of a residence except a residence designed for use as a single residence, shall ever be erected or placed upon any of said lots.

7. That no oil well shall ever be bored or operated upon any part of said premises; that no derrick nor machinery for conducting any kind of business whatever shall ever be erected or placed upon any portion of said premises.

8. That no residence shall be erected upon any lot in said premises nearer than fifteen feet to the north and south (or side) lines of said lots, not including steps and porte-cochere.

9. That no transfer or lease of any portion of said premises shall ever be made to anyone other than to a person of the Caucasian or white race.

10. That upon a breach of either or any one of the foregoing conditions, title to any property conveyed in said tract by said defendants, and to the whole thereof, shall become at once divested from the owner thereof, his heirs or assigns,

and shall revert to and revest in said defendants Wesley Clark and E. P. Bryan, their heirs and assigns.

11. That said tract is intended to be used exclusively as a first-class residence property, and that each and every condition, limitation, reservation, restriction, and covenant above set out is intended for and is for the benefit of each and every lot in said tract, and of the owners thereof, and that a breach of any one of said conditions, limitations, reservations, restrictions, and covenants may be enjoined or prevented by any person owning any property in said tract.''

The first sale of any lot in the tract was made to the respondent George P. Thresher in 1904. At the time of this transaction no map of Westmoreland Place was recorded. The map having subsequently been filed, a deed was executed with reference thereto in January, 1905, and it contained the restrictions above recited. Thresher expended fifty-five thousand dollars on the lot and in building and furnishing his home. The next sale was made to the Los Angeles Building Company, of which Thresher was vice-president. This deed, although dated October, 1904, was not executed until January, 1905. Defendants Clark and Bryan inserted in this deed the same restrictions, as conditions subsequent, which appear in the Thresher deed, except that by the conditions in the Thresher deed no residence could be built on the property costing less than fifteen thousand dollars, while by the conditions in the Los Angeles Building Company's deed the limit of cost was raised to twenty-five thousand dollars. Plaintiff Miles has succeeded to this property.

In 1904, both Clark and Bryan were engaged in the erection of residences for themselves in Westmoreland Place.

By two deeds dated and recorded in December, 1904, Bryan and wife conveyed to Clark, and by deed dated and recorded on the same day Clark and wife conveyed to Bryan certain of the lots located in the tract. Both these deeds contained the conditions subsequent which appear in the Thresher deed.

On November 7, 1906, Clark & Bryan dissolved their partnership, and made a division between themselves of the unsold frontage in Westmoreland Place, Clark and his wife quitclaiming to Bryan, and Bryan and wife to Clark, their segregated portions. The parcels allotted to Clark included the

lots Huntington was to have as his share, and by the latter's direction Clark and his wife conveyed this property to the Huntington Land and Improvement Company.

The next conveyance was made by Bryan to A. P. Johnson by deed dated December 11, 1907. The conditions subsequent contained therein are limited as to time and are otherwise at variance with those recited in the Thresher deed, under which it is claimed irrevocable servitudes were established. In 1908, Clark and his wife by deed conveyed to the Wesley Clark Investment Company the lots which were apportioned to Clark on the dissolution of the partnership above mentioned. Thereafter a conveyance was made by Bryan to intervenor Hattie J. Hollingsworth. This deed contains substantially the same restrictions as the Thresher deed, but does not contain the express covenant making the restrictions binding on all the lots in the tract. The price paid for this lot was $15,625. Subsequently Bryan made another sale to defendant W. F. Young. This deed contains a condition subsequent radically different from those of the Thresher deed, and the restrictive covenants therein provided for expire in January, 1916. On February 6, 1911, an agreement was entered into by Clark, Bryan, and the Huntington Land and Improvement Company changing the restrictions with reference to the tract. The building conditions provided for by this agreement are substantially the same as those contained in the Thresher deed, except that a portion of the frontage is omitted therefrom, and they are made to expire in 1925. Subsequent to the execution of this agreement Clark, in March, 1911, sold a lot to intervener Carr and his wife for the sum of twenty-two thousand five hundred dollars. This deed recites that the conveyance is made subject to the agreement entered into by defendants Clark, Bryan, and the Huntington Company in 1911. Thereafter an additional small frontage was purchased for the Carr home from the Huntington Company for the sum of two thousand five hundred dollars. This conveyance was made subject to the same restrictions imposed on the other lot and were in conformity with the agreement of 1911. A home was built by Carr and his wife upon this subdivision at an expense of sixty-five thousand dollars, exclusive of the cost of the land and of the furnishings. In November, 1912, the Clark Investment Company sold to defendant Wells a lot

in the tract upon conditions subsequent, imposing restrictions radically different from any of the other conveyances above recited, and Bryan conveyed to his daughters certain lots by way of gift, the deeds to which contained no reservations whatever.

By a contract dated November, 1912, and acknowledged and recorded, defendants Wesley Clark, E. P. Bryan, and Huntington Land and Improvement Company agreed to rescind their restriction agreement of February, 11, 1911, and thereafter in April or May, 1913, Westmoreland Place was placarded with large signboards, over the name Clark, Bryan, and the Huntington Land and Improvement Company, offering the property in that tract for sale for apartment houses and hotel purposes. At the same time the Los Angeles papers contained large advertisements announcing this fact. This action was thereupon brought by plaintiff and interveners, who own and occupy expensive residences on their respective lots situated in Westmoreland Place.

Judgment went in their favor, and under its terms plaintiff recovered judgment by which all the lots in Westmoreland Place are impressed with the common form of restrictions heretofore recited, and an easement to have such restrictions observed by every lot owner in favor of every other lot owner in the tract. A different judgment, hereinafter referred to, was rendered as to intervenors Carr and wife. We will first discuss the judgment in favor of plaintiff.

As ground for a reversal of this judgment it is first urged that the evidence is insufficient to sustain the finding that any general plan of restrictions was ever established or put into effect binding upon the title to all of the lots in the tract. It is not seriously contended, nor could it be, that originally it was not the intention of Clark and Bryan to create a restricted tract and to provide for high-class building restrictions therein, and to establish what courts have denominated a general building scheme; but it is claimed that such intention is insufficient to fasten such a scheme on the title to real property, and that a common form of restriction, before it can be made a part of the title to each lot, must in some way acquire a definite character; that its nature, as apart from its fixation on the lots, must have been definitely ascertained, and that when common grantors, as here, convey certain lots subject to restrictions, and certain

other lots freed therefrom, such a course of conduct nega-
tives the establishment of any general building scheme for
the entire tract, and is insufficient to put subsequent pur-
chasers upon notice, in the absence of proof, that they bought
with knowledge of the restrictions and building scheme.

[1] We are of the opinion that the evidence fully sup-
ports the judgment in this particular. The claimed restric-
tions were created and sufficiently established by the provi-
sions of the covenant contained in the contract between Clark
and Bryan and the Threshers, in the Thresher deed, in the
deed to the Los Angeles Building Company, and in the re-
spective deeds whereby Clark and Bryan conveyed to one
another their respective home sites in the tract, and by other
acts on the part of Clark and Bryan hereinafter referred to.
The building scheme with reference to the tract is further
established by the map thereof filed by Clark and Bryan
which contains the statements that no part of the property
is intended to be used or is dedicated to public use, but that
the private driveways indicated on the map are reserved for
the perpetual and irrevocable use of the owners of the lots,
their heirs and grantees, as appurtenant to the lots, and the
owners thereof. The contract and the five deeds above re-
ferred to each sets forth in numbered paragraphs the con-
ditions and restrictions which constitute the building scheme
for the tract, followed by the provision that upon a breach
of any of the restrictions, title to the property shall revert
to defendants; after which each instrument contains a clause
expressly making the restrictive covenants binding upon
every lot in the tract for the benefit of every owner.

We are referred to other evidence in the record as going
to establish the existence of the building scheme. This evi-
dence consists of statements of defendants to the purchasers;
of written copies of the building restrictions delivered to
them: by signboards erected on the property announcing the
high-grade restrictions; by written and printed documents
referring to the scheme; by an extensive line of advertise-
ments, and also by other declarations on the part of defend-
ants Clark & Bryan, both oral and written. We do not deem
a review of this evidence necessary. It is sufficient to say
that the evidence as a whole fully supports the finding of the
trial court that the claimed restrictions and building scheme

were fully established, and were made binding upon every lot in the tract.

[2] The principle that covenants of the character here involved operate as a covenant running with the land for the benefit of other lots in the tract is well established and recognized in this state. (*Los Angeles etc. Co.* v. *Southern Pacific R. R. Co.*, 136 Cal. 48, [68 Pac. 308]; *Hunt* v. *Jones,* 149 Cal. 301, [86 Pac. 686]; *Firth* v. *Marcovich,* 160 Cal. 260, [Ann. Cas. 1912D, 1190, 116 Pac. 729]; *Alderson* v. *Cutting,* 163 Cal. 504, [Ann. Cas. 1914A, 1, 126 Pac. 151]; *Parker* v. *Kenworthy,* 181 Cal. 783, [183 Pac. 950].)

Appellants further contend that the evidence fails to show that the defendants Young, Johnson, and Waldberg, to whom lots in the tract were conveyed by Clark & Bryan subsequent to the execution of the instruments relied on to establish the restrictions, had any notice thereof. Defendant Young did not complain of the existence of the restrictions, and the action as to him was dismissed. Defendant Johnson had actual notice of facts in relation thereto sufficient to put a prudent man upon inquiry. In addition thereto, both he and defendant Waldberg, in our opinion, were bound with constructive notice. [3] The deeds executed by Clark & Bryan, whereby the restrictive covenants were made effective against every lot in the tract, limited the title of the owners to that extent, and established the restrictions set forth as appurtenant to the entire tract, and they could therefore convey no greater title than they had.

[4] Appellants insist, however, that they were only bound with constructive notice of those things which were within the course of the title to the land. While it is true that these defendants did not deraign title through a deed containing the restrictions, they did deraign title through the same grantors, the principal defendants herein, who themselves created the conditions. The deeds executed by their grantors limiting their title were of record. Mere ordinary prudence would have dictated an examination of these deeds to ascertain if the remaining lots were affected by them. The map of the tract was on file, and the sales were made with reference thereto, and it expressly indicated the existence of a building scheme. Under these circumstances we are of opinion that the documents of record constituted constructive notice not only of the existence of the building

scheme, but also that the tract was burdened with certain easements. (*Holt* v. *Fleishman,* 75 App. Div. 593, [78 N. Y. Supp. 647]; *King* v. *Union Trust Co.,* 226 Mo. 351, [126 S. W. 415]; *Smith* v. *Graham,* 161 App. Div. 803, [147 N. Y. Supp. 773]; *Guaranty Realty Co.* v. *Recreation Gun Club,* 12 Cal. App. 383, [107 Pac. 625].) In addition thereto, the general appearance and character of the tract, and the nature of the improvements thereon, ought to indicate to one interested the presence of some character of restrictions. (*Tallmadge* v. *East River Bank,* 26 N. Y. 111.)

[5] Appellants further urge as ground for reversal that the character of the property in the neighborhood surrounding the tract has so changed since the time when plaintiff and intervenors claim that a general scheme of restrictions had been established and imposed upon the land that it would be inequitable to enforce it, even assuming it to exist, and in this connection they claim that the evidence shows that many apartment houses and business establishments have been located in the vicinity of the tract, and that by reason of such change of surroundings the property is no longer valuable or available for the high-class residences of the character specified in the restrictions and erected on the property, the lots being worth five times as much for the semi-business purpose of apartment houses and hotels.

It is undoubtedly true that the authorities support the proposition that where there has been a change in the uses to which property in the neighborhood is being put, so that such property is no longer residence property, it would be oppressive and inequitable to give effect to restrictions where the changed condition of the locality has resulted from other causes than their breach. (*Los Angeles Terminal Land Co.* v. *Southern Pacific R. R.,* 136 Cal. 36, [68 Pac. 308]; *Trustees of Columbia College* v. *Thatcher,* 87 N. Y. 311, [41 Am. Rep. 365]; *Jackson* v. *Stevenson,* 156 Mass. 496, [32 Am. St. Rep. 476, 31 N. E. 691].) No such situation, however, is here presented. No radical change in the tract or its vicinity is shown by the record. On the contrary, the evidence supports the finding that there has been no unfavorable change, but rather that the property has improved. The fact that apart from and surrounding the tract some business has grown up, and that the land has become more

valuable in consequence, in no manner entitles defendants to be relieved of the restrictions they have created. This condition is but the natural result of the improvement of the various tracts, and the fact that the property may have become more valuable thereby for business purposes is immaterial. (*Thompson* v. *Langan,* 172 Mo. App. 64, [154 S. W. 808]; *Evans* v. *Foss,* 194 Mass. 513, [11 Ann. Cas. 171, 9 L. R. A. (N. S.) 1039, 80 N. E. 587]; *Reed* v. *Hazard,* 187 Mo. 547, [174 S. W. 111].) Courts in such cases are not controlled exclusively by money value, but may protect a home. (*Iselin* v. *Flynn,* 90 Misc. Rep. 164, [154 N. Y. Supp. 133]; *Spahr* v. *Cope,* 143 Mo. App. 114, [122 S. W. 379].)

If we are correct in our conclusion concerning the establishment of the restrictive covenants, all of the property of the parties in the tract, including the intervenors, is equally charged with the burdens thus imposed, and the same judgment should have been rendered against all. The judgment as rendered in favor of plaintiff and others imposes perpetual restrictions and an easement binding upon all the lots in the tract, while the judgment in favor of intervenors Carr and wife simply imposes on their lots the restrictions provided for in their deeds, which are in conformity with those established by Clark, Bryan, and the Huntington Land Company under their agreement of February 6, 1911, the terms of which limited the established restrictions in the manner hereinbefore set forth.

The judgment, therefore, is modified so as to make the restrictions and easements as established by the original deeds as heretofore recited binding on and appurtenant to every lot in the tract.

Our attention has been called to the fact that by inadvertence the eighth restriction contained in the covenants, relating to side-lines, has been incorrectly incorporated in the judgment. This is a matter that may be remedied by the trial court.

For the reasons given, the judgment as modified will stand affirmed, plaintiff and intervenors other than Carr and wife to recover costs.

Waste, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied

by the supreme court on January 29, 1920, and the following opinion then rendered thereon:

THE COURT.—In denying a hearing in this court after decision by the district court of appeal of the first appellate district, division one, we do not wish to be considered as approving any modification of the judgment of the lower court in favor of the intervenors Carr. No complaint on this point is made in the petition for hearing in this court, and for that reason we have not considered the same.

All the Justices concurred, except Kerrigan, J., *pro tem.*, who was absent.