[L. A. No. 8471.   In Bank.—March 30, 1927.]

## LUELLA E. DOWNS et al., Appellants. v. J. L. KROEGER, Respondent.

[1] DEEDS—BUILDING RESTRICTIONS—CHANGE OF NEIGHBORHOOD.—Where a tract of land was subdivided and laid out for residential purposes and restrictive covenants running with the land were inserted in all deeds by which parts of said tract were conveyed, prohibiting until a certain time the construction of any structure but residences in the restricted area, a change in the uses to which the property in the neighborhood is being put of such nature that it is no longer residence property renders it unjust, oppressive, and inequitable to give effect to the restrictions, if such change has resulted from causes other than their breach.

[2] ID.—INJUNCTION.—In such a case an injunction will not issue to restrain the defendant from completing a store building upon his lot, where the evidence shows, and the court finds, that defendant's property is essentially business property, and that

---

1. See 9 Cal. Jur. 367.

if he is restrained from using it for the only purpose for which it is now suitable and available, he will be irreparably damaged and deprived of any use whatsoever thereof.

[3] Id.—Judgment—Scope and Effect of.—In determining the scope and effect of a judgment, the entire judgment-roll may be looked to for the purpose of its interpretation; and it is held in this case that the judgment is supported by the findings when examined and considered with the record as a whole and it can only be construed to harmonize with them.

---

(1) 18 C. J., p. 400, n. 84, 85, 86; 32 C. J., p. 212, n. 31, p. 351, n. 78.    (2) 4 C. J., p. 898, n. 92; 32 C. J., p. 212, n. 31.    (3) 34 C. J., p. 502, n. 8.

APPEAL from a judgment of the Superior Court of Los Angeles County. Ralph H. Clock, Judge. Affirmed.

The facts are stated in the opinion of the court.

James W. Bell and C. W. Hall for Appellants.

Jones & Weller, Dana R. Weller, John N. Cramer and Hunsaker, Britt & Cosgrove for Respondent.

PRESTON, J.—Plaintiffs instituted this action for a permanent injunction to restrain defendant from completing a store building upon lot 27, block 9, in tract 2072, commonly known as Wellington Square, situate in the city of Los Angeles, said tract consisting of approximately eight contiguous blocks, forming a rectangular-shaped area containing 397 lots. In the year 1912 it was subdivided and laid out for residential purposes, restrictive covenants running with the land being inserted in all deeds by which parts of said tract were conveyed, prohibiting until the year 1960 the construction of any structures but residences in the restricted area. Said lot 27 is a border lot which abuts West Adams Street and faces an unrestricted area. It was purchased by defendant in 1920 and he concedes the validity of the restrictive covenants and that he took said lot subject thereto.

Plaintiffs, owners of certain lots in the tract, allege that the erection of a store building on said lot by defendant would be in violation of said restrictive covenants; would

depreciate the value of plaintiffs' property and lower the class of the neighborhood, all to their damage.

Defendant contends that the character of the surrounding neighborhood has so changed that the property was and is essentially business property, and as a result the covenants and restrictions relied upon by plaintiffs have become ineffective and their enforcement would be inequitable, unjust, and oppressive.

The trial court, after hearing the evidence and inspecting the locality, denied the relief prayed for and plaintiffs have taken this appeal from the judgment, urging that said restrictions are for the benefit of all owners in said tract and of substantial value to the dominating lots therein; that changed conditions in the neighborhood, or even the fact that defendant's property may have become more valuable for business purposes, are immaterial and not a defense to an action for injunction, and furthermore that no such changed conditions are in fact shown by the evidence.

Respondent contends that the equitable remedy by injunction will not be granted where the condition of the property is so altered as to render it unfit for the purposes for which it was originally designed and that the enforcement of the restrictions would result in slight, if any, benefit to plaintiffs, but would work great and irreparable hardship upon respondent.

The court, among other things, found that although the permitting of said structure for the purpose stated was contrary to said restrictions, it would not greatly or at all depreciate the value of plaintiffs' property or lower the general class and character of the neighborhood; nor would plaintiffs suffer damage of any character thereby.

That in 1920, when said lot was purchased by defendant, no improvements of any character existed on Adams Street for a distance of several blocks, but within the past three years that section of Adams Street had become a business section and many stores and business structures had been built, including three buildings occupied by building contractors and real estate brokers; a building for business occupied by a real estate broker, a shoemaker, and a restaurant; and other structures occupied by a grocery store, a meat market, and a hardware store.

That by reason of the construction of business buildings defendant's lot is no longer suitable or desirable for residential purposes and is essentially business property and located in a section devoted exclusively to business purposes; that the construction and use of a business building on the lot of defendant will not injure or damage the property of plaintiffs or the owner of any other lot in said tract 2072, but if defendant is restrained from using his property for the only purpose for which it is now suitable and available, he will be irreparably damaged and deprived of any use whatsoever of said property.

That by reason of the changed conditions in the neighborhood occurring since said restrictions were imposed, it would be inequitable to enforce them against the use of said property as contemplated by defendant.

A careful review of the evidence and an inspection of the several exhibits introduced at the trial clearly indicate, in our opinion, that it is amply sufficient to support the findings, and the further fact may be noted that the trial court had previously inspected the locality for a better understanding of the testimony.

Respondent testified that at the time he purchased the lot there was a big Chinese vegetable garden on the south side of the street, and the whole tract did not have a building on it; that during the year preceding the trial some business buildings had been constructed in the unrestricted area; that it would not pay to put a residence on his lot and that the lot would be better adapted for business.

Nathan Levin, a resident of the northeast corner of Adams and Buckingham Streets, testified that three store buildings had been erected across the street, occupied by a laundry, silk store, cleaning and pressing place, real estate office, and church; also as to grocery and drugstore in the adjoining blocks.

On cross-examination he testified that he paid ten thousand two hundred dollars for his place and on redirect that as business property, without restrictions, the lot alone would be worth twelve thousand dollars; that on account of the street-car line on Adams Street and the traffic and rubbish it is unfit for residences and no place to keep children.

E. S. Butterworth testified that the property was more adaptable and valuable for business purposes and not rea-

sonably fit for residential purposes; that he did not think lifting the restrictions on this block would depreciate the value of the rest of the tract.

Frank D. Tatum, a real estate broker, testified that Adams Street had changed into a business street and that the remaining vacant property was only fit for business purposes and absolutely useless for residences.

The only witnesses called in rebuttal by appellants, Charles E. Ott, the real estate broker who assisted in subdividing Wellington Square, and John H. Albright, a builder and contractor residing therein, merely testified that in their opinion the lifting of the restrictions would depreciate the value of the property in the tract.

[1] The authorities unquestionably support the conclusion of the trial court in holding that where there has been a change in the uses to which the property in the neighborhood is being put, so that such property is no longer residence property, it would be unjust, oppressive, and inequitable to give effect to the restrictions, if such change has resulted from causes other than their breach.

"It is evident that the purpose of the restrictions as a whole was to make the locality a suitable one for residences; and that, owing to the general growth of the city, and the present use of the whole neighborhood for business, this purpose can no longer be accomplished. If all the restrictions imposed in the deeds should be rigidly enforced, it would not restore to the locality its residential character, but would merely lessen the value of every lot for business purposes. It would be oppressive and inequitable to give effect to the restrictions, and, since the changed condition of the locality has resulted from other causes than their breach, to enforce them in this instance could have no other effect than to harass and injure the defendant, without effecting the purpose for which the restrictions were originally made (citing cases)." (*Jackson* v. *Stevenson,* 156 Mass. 496, 502 [32 Am. St. Rep. 476, 31 N. E. 691, 693].)

"It certainly is not the doctrine of courts of equity, to enforce, by its peculiar mandate, every contract, in all cases, even where specific execution is found to be its legal intention and effect. It gives or withholds such decree according to its discretion, in view of the circumstances of the case, and the plaintiff's prayer for relief is not answered, where, under

those circumstances, the relief he seeks would be inequitable. (*Peters* v. *Delaplaine,* 49 N. Y. 362; *Margraf* v. *Muir,* 57 N. Y. 155; *Mathews* v. *Terwilliger,* 3 Barb. (N. Y.) 51; *Radcliffe* v. *Warrington,* 12 Ves. (Eng.) 331.) If for any reason, therefore, not referable to the defendant, an enforcement of the covenant would defeat either of the ends contemplated by the parties, a court of equity might well refuse to interfere or if in fact the condition of the property by which the premises are surrounded has been so altered 'that the terms and restrictions' of the covenant are no longer applicable to the exisiting state of things. (1 Story's Equity Jurisprudence, 10th ed., sec. 750.) And so, though the contract was fair and just when made, the interference of the court should be denied, if subsequent events have made performance by the defendant so onerous, that its enforcement would impose great hardship upon him, and cause little or no benefit to the plaintiff." (*Trustees of Columbia College* v. *Thacher,* 87 N. Y. 311, 317 [41 Am. Rep. 365, 367].)

"Under the circumstances now existing the covenant is no longer effective for the purpose in view by the parties when they made it, and the enforcement thereof cannot restore the neighborhood to its former condition by making it desirable for private residences. If the building restrictions were of substantial value to the dominant estate, a court of equity might enforce it even if the result would be a serious injury to the servient estate, but it will not extend its strong arm to harm one party without helping the other, for that would be unjust. An injunction that bears heavily on the defendant without benefiting the plaintiff will always be withheld as oppressive." (*McClure* v. *Leaycraft,* 183 N. Y. 36, 44 [5 Ann. Cas. 45, 75 N. E. 691, 693].)

The evidence, in our opinion, is sufficient, within the rule as announced by the above authorities, to show such a change in the character of the locality as to warrant an equity court in refusing to enjoin a violation of the restrictive covenants, and supports the findings and judgment.

[2] There remains the further contention of appellants that the fact that defendant's property has become more desirable or valuable for business than for residence purposes is not a defense to an action for injunction and that its value for business purposes is immaterial, in support of which they rely largely upon the case of *Miles* v. *Clark,* 44

Cal. App. 539–549 [187 Pac. 167]. That case is not in point as the evidence here shows, and the court found, that defendant's property is essentially business property, and if he is restrained from using it for the only purpose for which it is now suitable and available, he will be irreparably damaged and deprived of any use whatsoever thereof. In other words, that defendant's property is "absolutely useless for residence purposes." (Testimony of Mr. Tatum.)

It is stated in the case of *Miles* v. *Clark, supra,* that "where there has been a change in the uses to which property in the neighborhood is being put, so that such property is no longer residence property, it would be oppressive and inequitable to give effect to restrictions where the changed conditions of the locality has resulted from other causes than their breach. (*Los Angeles Terminal Land Co.* v. *Southern Pacific R. R.,* 136 Cal. 36 [68 Pac. 308]; *Trustees of Columbia College* v. *Thacher,* 87 N. Y. 311 [41 Am. Rep. 365]; *Jackson* v. *Stevenson,* 156 Mass. 496 [32 Am. St. Rep. 476, 31 N. E. 691].)" The evidence and the findings in that case, however, showed no unfavorable change in the tract or its vicinity and the above doctrine was held inapplicable there.

The question of damage to appellants is disposed of by the cases above cited and in the finding, supported by the evidence, that appellants will not suffer any damage whatsoever from completion of defendant's building.

It is proper to note in disposing of the appeal in this case that we are by no means intending to establish a precedent in cases of this general character, where the facts and circumstances distinguish them from the case before us. Nor does it by any means follow that the integrity and validity of the restrictions obtaining as to other property in this subdivision will necessarily be affected in any manner or at all by the conclusion herein announced. The findings of the court below under the evidence are binding upon us and we have simply adhered to the well-known rule of law governing us in such a situation.

[3] Appellants also make some objection to the form of the judgment, claiming that it exceeds the findings. It appears to be supported by the findings when examined and considered with the record as a whole and it can only be construed to harmonize with them. "In determining the

scope and effect of the judgment the entire judgment-roll may be looked to for the purpose of its interpretation." (*Freeman* v. *Donohoe,* 188 Cal. 170, 172 [204 Pac. 593].)

Judgment affirmed.

Shenk, J., Seawell, J., and Langdon, J., concurred.

RICHARDS, J., Dissenting.—I dissent. The tract known as "Wellington Square," lying along the Wellington Road about five miles from the heart of the city of Los Angeles, was laid out, subdivided, and sold about fourteen years ago as a restricted residence district, to be used for residence purposes only, as expressed in the deeds to purchasers of residence lots therein. These deeds contained the covenant "That no apartment house, flat, lodging house, store, hotel or any other than a first-class private residence, with or without the customary outbuildings, including a private stable or garage, shall be erected, placed or permitted on said land or any part thereof." There were further specific restrictions touching the minimum cost of residences to be erected therein, their distance from the front line of the premises, regulating the location of outbuildings and the height of hedges, fences, copings, or walls, and prohibiting signboards, advertising boards or banners within said restricted area. The lots and tracts of land therein were sold to many purchasers, subject to the foregoing restrictions of the deeds of each, including the defendant herein, and these purchasers or their transferees have during the intervening years proceeded to build their residences and homes thereon and therein until practically the entire area thereof has been built up residentially, and until, as a matter of common knowledge, and as the exhibits and photographs appended to the transcript herein disclose, Wellington Square has become and now is one of the most beautiful and attractive exclusively residence areas within the city of Los Angeles. Heretofore and until this defendant conceived the idea that it would be more profitable to him to violate than to continue to comply with the covenants, conditions, and restrictions upon which he was permitted to purchase his lot within said area, no other attempted breach thereof has occurred. His sole excuse for his breach of the express conditions, covenants, and restrictions of his grant is that the

lands and lots of an adjoining tract across the street from one side of this restricted area, and which constitutes an unrestricted area, are being devoted in part to business purposes. There is no evidence in the case showing that the other three sides of this restricted subdivision have been invaded by business or are other than residential in character, nor is there any evidence that the unrestricted tract on Adams Street opposite the defendant's lot has been wholly devoted to business establishments. In fact, the evidence is to the contrary. We have the condition as shown by the practically undisputed evidence wherein the defendant, because some places of business have been erected in an unrestricted area across the street from him, claims the right to put a store upon his lot within the restricted area, in violation of the covenants and restrictions of his deed, the effect of which, if permitted, will inevitably be to open the way to such an invasion of Wellington Square by stores, garages, service stations, apartment and lodging houses and other forbidden structures and uses as would ere long entirely destroy the restrictive covenants upon which residential owners of property within this area purchased and have improved and enjoyed their restrictive holdings therein. No case that has been cited in the main opinion and none that I have seen has gone to this extent before in permitting a single owner within a restricted area to not only violate his own covenants but to destroy the essential covenants, prohibitions, and securities of his co-owners simply because other persons have put stores and shops in an unrestricted area across the street from his lot and thus made it more profitable to himself to put his lot to like uses in violation of the terms, covenants, and restrictions of his deed. It is just this to which the main opinion herein gives its sanction. The case of *Jackson* v. *Stevenson*, 156 Mass. 496 [32 Am. St. Rep. 476, 31 N. E. 691], from which the main opinion quotes as sustaining its doctrine, does not support it. It refers to the "present use of the whole neighborhood for business" and to the loss by the "locality of its residential character." The term "locality" as employed in the quoted portion of said case evidently means "the restricted locality." This case has no semblance as to its facts to the case at bar. The case of *Trustees, etc.,* v. *Thacher* is equally inapplicable to the in-

stant situation, since the court found not only that "the general current of business affairs had reached and covered the entire premises," but also found the construction and operation of an elevated railway alongside the restricted district, which had the effect of producing a large depreciation in rents and frequent vacancies. The case of *Miles v. Clark,* 44 Cal. App. 539, 549 [187 Pac. 167], states, in my opinion, the correct rule as to the effect to be given to changes in the use of property in the neighborhood where no radical change in the restricted tract is shown. In that case, as in this, the tract in question had been subdivided and sold under similar restrictions contained in the conveyances to purchasers who had built upon and occupied their respective holdings as strictly residential properties. In that case, as in this, the defendants were found to be holding their property subject to such restrictions. In that case, as in this, the defendants were seeking to avoid the binding force of such restrictions and to put their property to business uses, upon the claim that the character of other property in the vicinity of the tract had so changed through the erection of apartment houses and business establishments that it would. be inequitable to enforce such restrictions against a like use of the defendants' property. The appellate court dealing with that situation said: "The fact that apart from and surrounding the tract some business has grown up and that the land has become more valuable in consequence in no manner entitles the defendants to be relieved from the restrictions they have created. This condition is but the natural result of the improvement of the various tracts, and the fact that the property may have become more valuable thereby for business purposes is immaterial. (Citing cases.) Courts in such cases are not controlled exclusively by money value, but may protect a home." The fundamental error of the trial court as to the rule applicable to cases of this character lies in its holding that when the property of the individual owner has been so far affected by conditions existing in contiguous unrestricted territory as to be less valuable to him for residential than for business purposes he is no longer bound by the conditions and restrictions of his deed. Such is not the rule under the practically unanimous current of authority which holds that it is only when the character of the restricted

region as a whole so far changes as to render it no longer adaptable to restricted residential uses that the right to be relieved from such restrictions can arise. There is no finding in this case that such a condition exists within the restricted area as a whole, but only as to the eight lots therein fronting on Adams Street. As to all the rest of the tract the finding is that "said eight lots are the only lots in said tract which are affected by the changed conditions on said Adams Street." It follows that the remaining 389 lots in the Wellington Square tract still retain their residential character, but have lost the restrictive protection. Such is the inevitable result of the decision of the trial court, to which the majority opinion herein lends its approval. The principles laid down in *Martin* v. *Holm*, 197 Cal. 733 [242 Pac. 718], touching the sacredness of the reciprocal covenants of owners in restricted areas should be given application to the case at bar, and so applied would operate to prevent the single owner of a lot in this restricted area from doing that with his property which will eventuate in the destruction of the restrictive benefits and protection of all of his co-owners therein. That such will be the result if this judgment is to stand was aptly indicated by Mr. Justice Lennon in the case of *Miller* v. *Board of Public Works*, 195 Cal. 477 [234 Pac. 381], wherein he points out that once the restrictive covenants of the home owner are broken down his only recourse is to move to another location and by so doing be compelled to abandon the benefits emanating from a permanent home site. Such, in my opinion, would be the effect of the affirmance of the judgment herein.

The trial court fell into another fundamental error which the main opinion herein would perpetuate. It is the error that the plaintiffs, seeking to enforce a building restriction against the defendant equally bound to conform to its covenant, but refusing to do so, must allege and prove damage before they can obtain an injunctive remedy. The rule is just the contrary. The damage resulting to the plaintiffs and their co-owners in the restricted area from an unjustified breach of covenants such as these is of necessity both irremediable and impossible of ascertainment, since they relate to the comfortable enjoyment of homes secluded from business in the restricted region. The trial court was, therefore, in error in denying the plaintiffs injunctive relief upon

200 Cal.—48

the ground that no damage had been shown. Such a conclusion was contrary to its own finding upon the undisputed evidence herein that the residential character of this restricted area as a whole had not undergone a change. It follows necessarily that for the foregoing fundamental errors the judgment herein should be reversed.

Curtis, J., and Waste, C. J., concurred.

Rehearing denied.