[Civ. No. 16621.   Second Dist., Div. One.   June 6, 1949.]

W. E. ROBERTSON et al., Appellants, v. J. NORTON
NICHOLS et al., Respondents.

George W. Burch, Jr., and Pacht, Pelton, Warne, Ross & Bernhard for Appellants.

Biby & Biby, Wm. K. Young and Benjamin & Kronick and Pat A. McCormick for Respondents.

WHITE, P. J.—Plaintiffs and appellants, purchasers of five lots in the "Henry J. Brown Wilshire Terrace Tract" in the city of Los Angeles, upon which they desired to erect apartment houses, brought an action to quiet title and for declaratory relief against some of (but not all) the owners of other property in the tract, seeking to have set aside restrictions to single family residence purposes which had been placed on all the lots in the tract by the original subdivider. The trial court upheld the restrictions and entered judgment accordingly, from which judgment this appeal is prosecuted.

The restrictions provided that no structure should be erected on any lot except a "first class private residence of at least two stories in height, with or without the customary outbuildings, including a private stable"; that such residence should cost not less than $3,500 and be set back 30 feet from the front line of the lot and should face the front line of the lot. It was further provided that a breach of the restrictions should cause the premises to revert to the grantor; that the restrictions should operate as covenants running with the land for the benefit of owners of all lots in the tract; and that a breach might be enjoined, abated or remedied by appropriate proceedings by any of such owners.

The tract in question, subdivided in 1908 by Los Angeles Trust Company, is bounded on the west by Bronson Avenue, on the north by Fifth Street, on the east by the rear property line of lots on the east side of Wilton Place, and on the south by Wilshire Boulevard. The tract is traversed east and west by Sixth Street and north and south by Norton Avenue and Van Ness Avenue. The area thus comprises six square blocks plus the lots on the east side of Wilton Place. At the time of the subdividing, the condition of the surrounding area was substantially as follows: The area immediately adjacent on the west was undeveloped and unsubdivided acreage, which was later subdivided as the Windsor Square Tract, containing very rigid building restrictions which have been strictly observed. The undeveloped acreage to the north was subsequently subdivided as the Van Ness Avenue Square Tract; the area to the east was then a residential subdivision known

as the Westminster Place Tract. The area to the south of Wilshire Boulevard, then sparsely improved with residences, was in succeeding years rapidly built up with substantial residences which in the more recent years have been used for business and residential income purposes.

Plaintiffs alleged that the original restrictions had become ineffective because with the growth of the city in the intervening years conditions had changed within and adjacent to the tract, in that Wilshire Boulevard and Sixth Street had become two of the most congested streets in the city with vehicular traffic, including bus lines on Wilshire Boulevard; that automatic traffic signals operate on Wilshire Boulevard; that Crenshaw Boulevard, running north and south one and one-half blocks west of the tract, is also a heavily congested street; that "there has been a change in the use of the property located in the same tract and block as that of the plaintiffs, in that lots 20, 21 and 22, facing on Bronson Avenue, and being immediately adjacent to the plaintiffs' property on the south, is improved with a garage building . . . lots 1, 2 and 3 of said tract are improved with the Los Altos Apartment House, and lots 4, 5 and 6, . . . with a 'Thriftymart' public market. . . ."

It was further alleged that the Planning Commission of the city of Los Angeles, prior to 1932, adopted a zoning ordinance by which the property on which the apartment house and market are located and the lots on the east side of Bronson, including the lots of plaintiffs, were placed in an R-4, or residential income, zone. In addition to the foregoing changes, many apartment houses and other commercial structures, it was alleged, have been erected outside the tract and in the neighborhood of the property of the plaintiffs and defendants.

Plaintiffs further alleged that when they purchased the property in 1945, all the foregoing changes were in existence and that they purchased on the representation of the record owner that the lots could be used for the erection of an apartment house; that if the building restrictions are enforced the lots are not worth more than $2,500 apiece, but as sites for apartment houses they are worth in excess of $7,000 each.

It was further alleged that by reason of the changes in the uses to which the property in the tract and in the neighborhood is being put, plaintiffs' property is no longer residential, and it would be oppressive and inequitable to give effect to the building restrictions, and would irreparably damage plain-

tiffs; that relieving plaintiffs' property from such restrictions will not deprive defendants of the use of their properties for residence purposes or lessen the value thereof. The trial court found that the restrictions were valid and enforceable; that although 17 lots in the tract along Wilshire Boulevard are now used for business purposes, the balance of the tract, approximately 100 lots, has been improved, used and occupied for residence purposes in accordance with the restrictions; that although by reason of the location of plaintiffs' property and the growth westward of the city, their property has become more valuable for other than single family residences, nevertheless the property of both plaintiffs and defendants is suitable and desirable for single family residential purposes in accordance with the restrictions.

Appellants contend first that the restrictions as originally imposed did not create enforceable equitable servitude in favor of each lot owner against the others, and second, that assuming the validity of the restrictions, the changed conditions in the tract itself and the surrounding neighborhood render their enforcement inequitable and oppressive.

Appellants assert that the restrictive covenants in the instant case are not such as run with the land under section 1468 of the Civil Code, as such covenants run only as between the original grantor and grantee, but are governed solely by section 1462 of the Civil Code (relating to covenants contained in a grant), and in such latter case "a burdensome covenant contained in a deed which in no way benefits the property conveyed is not binding at law upon the transferees of the grantee." (*Marra* v. *Aetna Construction Co.*, 15 Cal. 2d 375, 377, 378 [101 P.2d 490].) ■ It is next asserted that the restrictive covenants here in no way benefit the property of plaintiffs, and that the fact that the property has never been built upon shows that the existence of the restrictions has deprived the property from being used for the only practical use to which it could be put. Testimony is referred to that as far back as 1928 the property was not suitable for single family residences. This argument is fallacious, in that it assumes to determine the validity of the restrictions, when imposed, in the light of conditions as they now exist, rather than in the light of conditions and the plan and purpose of the subdivider in 1908. It may be assumed, as contended, that these lots were less desirable than others in the tract, and hence remained vacant, but this by no means

warrants a conclusion that the restrictions when imposed did not benefit them. The same argument could as well be made as to any lot in any tract which happened to remain vacant and with the passing of the years became more desirable from a dollar standpoint if it could be used contrary to the restrictions.

Appellants' contention that no equitable servitude was created must be rejected. As found by the trial court, subsequent to the establishment and creation of the tract by the filing and recording of a map and plan thereof, "the owner of said property sold, transferred and conveyed by grant deed each and all of said 117 lots, and each and all of said deeds expressly provided that said transfer and conveyance was subject to and bound by each and all of said restrictions, conditions and covenants. . . ." Each deed provided that "the above-mentioned conditions shall operate as covenants running with the land for the benefit of owners of all such lots in said tract, . . . and the breach . . . may be enjoined, abated or remedied by appropriate proceedings by any or either of such owners. . . ." The facts adequately disclose a reference to a common plan of restriction and a designation of the dominant tenement, as required by *Werner* v. *Graham*, 181 Cal. 174 [183 P. 945], and *Wing* v. *Forest Lawn Cemetery Assn.*, 15 Cal.2d 472, 480 [101 P.2d 1099, 130 A.L.R. 120].

It is contended that the restrictions are invalid for the reason that in 1925, Genevieve E. Brown and Pacific Southwest Trust and Savings Bank, successors to the original grantor and subdivider, Los Angeles Trust Company, executed an instrument whereby they released and quitclaimed to one of plaintiffs' predecessors in title their reversionary rights under the restrictive covenants. This point is, of course, without merit if the restrictions as originally imposed created, as intended, enforceable equitable servitudes in favor of each lot owner against the others. The quitclaim by the holder of the right of reversion or reentry for breach of a condition obviously could not operate to the prejudice of the owner of a lot in the tract if, as we hold, the original restrictions constituted valid equitable servitudes.

Appellants seemingly contend further that it was not intended to create servitudes in favor of each lot against the others because Lots 23 and 24 were acquired in 1922 by the McCarthy Company by virtue of a deed which did not mention the restrictions. The McCarthy Company resubdivided the two lots as Lots 1, 2 and 3 of Tract 3854 and conveyed the

.same with a new set of restrictions expiring in 1940. This property is now owned and occupied by the defendants Elizabeth Von Eltz and J. Norton Nichols, and is located on the north side of Sixth Street facing the property of plaintiffs. This fact cannot aid appellants. The original conveyance from the subdivider recited the restrictions, and the McCarthy Company acquired title by a deed from a successor of the original grantee, and its title was subject to the restrictions of record whether they were mentioned in the deed to it or not.

We come now to a consideration of appellants' contention that the restrictions should not be enforced because, by reason of a change in the character of the surrounding neighborhood as well as in the tract itself, it would be inequitable and oppressive to give the restrictions effect, as their enforcement would only harass or injure the plaintiffs without benefiting the defendants. This, of course, is a question that must be determined upon the facts peculiar to each case presented. (*Downs* v. *Kroeger*, 200 Cal. 743, 749 [254 P. 1101]; *Fairchild* v. *Raines*, 24 Cal.2d 818, 825 [151 P.2d 260]; *Strong* v. *Hancock*, 201 Cal. 530, 551 [258 P. 60].)

The tract as originally subdivided contained 117 lots. One hundred of the lots are improved with single-family residences, all of them 25 or more years old, except one built in 1939. At the northeast corner of Wilshire and Bronson (the southwest corner of the tract) there is located a seven-story apartment house; immediately to the east of the apartment building is a public market, and then a parking lot. Behind the apartment building, three lots on Bronson contain a tennis court and a garage. The five lots of plaintiffs are immediately to the north of the garage, front to the west on Bronson, and extend to Sixth Street, having a total frontage of approximately 240 feet.

The findings of fact of the trial court in a case such as this are entitled to the same weight as in any other case. Its findings of fact, if based on any substantial evidence, are final, and his conclusions, sitting as a chancellor in equity, are entitled to great weight. (*Downs* v. *Kroeger, supra*; *Strong* v. *Hancock, supra*, p. 551. The trial judge heard the expert evidence of real estate men and the testimony of residents of the tract who considered it residentially desirable. He also personally viewed the tract. The record before this court, complete as it is with photographs of the area,

including an aerial view, affords no ground for disagreement with the conclusions of the trial judge, but on the contrary supports his decision. Despite the unparalleled growth of the city since the tract was laid out, the development of Wilshire Boulevard and adjacent parallel streets as heavily traveled thoroughfares, the intrusion of business structures along Wilshire Boulevard, and the breaking down of residential restrictions in adjoining neighborhoods (except to the west), the tract in question remains an area of approximately 100 substantial, well-kept homes, increasingly desirable by the very fact of their "close-in" location.

It is true that the restrictions have been broken along Wilshire Boulevard, but as stated in *Fairchild* v. *Raines*, 24 Cal.2d 818, 828 [151 P.2d 260], "The fact that all the lots in the tract are not subject to the covenant is not conclusive of the issue. Even if restrictions are not enforcible as to every lot in an area originally covered by an agreement they may be upheld as to a part of that area if such part is of sufficient extent and so located that the original purpose of the restrictions can be accomplished." (See, also, *Downs* v. *Kroeger*, 200 Cal. 743, 749 [254 P. 1101].) With respect to the Wilshire frontage, the situation created by the growth of the city and the development of the boulevard could be said to have rendered enforcement of the restrictions impracticable and inequitable. But as to the remainder of the tract, the purpose of the restrictions has been achieved and can continue to be maintained. While the presence of the business frontage on Wilshire Boulevard may or may not have, to some extent, diminished the desirability of the lots in the tract for residence purposes, it has not rendered them unsuitable therefor. True, the lots of plaintiffs are not perhaps so desirable as those to the north and east which have been built upon, but the trial court's finding that plaintiffs' property is suitable and desirable for residence purposes is supported by substantial evidence. ▮ The fact that unrestricted use of the property would be more profitable does not warrant failure to enforce the restriction if the original purpose of the covenant can still be realized. (*Fairchild* v. *Raines, supra,* p. 827; *Marra* v. *Aetna Construction Co.*, 15 Cal.2d 375, 378 [101 P.2d 490].)

Enforcement of the restrictions will result in substantial benefit to the defendants, and will not, as contended, only serve to injure and harass the plaintiffs without benefiting defendants. This is not the case of a party who had long

owned a piece of property and found, that because of circumstances beyond his control, he could no longer use the property for a permitted use. Plaintiffs here purchased their lots in 1945, after the character of the tract had long been established, and with at least constructive knowledge of the restrictions of record. So far as damage to the defendants is concerned, construction of the multiple units proposed by plaintiffs would result in 35 families occupying the area directly across the street from defendant Nichols' property, nor is there any assurance, were the restrictions broken, that plaintiffs would not erect a height-limit apartment building.

Aside from the restriction violations along Wilshire Boulevard, plaintiffs point out violations within the tract with relation to setback lines and the facing of houses, as well as the fact that the residences of defendants Von Eltz and Nichols are in violation of the original restrictions in that they are located on Lots 1, 2 and 3 which were created from Lots 23 and 24 of the original plat. We think that what has heretofore been said is a sufficient answer to appellants' contention that the right to enforce the restrictions has been waived, that is, that the essential purpose of the restrictions has been maintained, and the asserted violations have not so destroyed the value of the restrictions as to justify failure to enforce them.

Finally, appellants make the suggestion that public policy requires that the restrictions be lifted. It is pointed out that the restrictions by their terms have no expiration date but purport to be perpetual. "All of the properties," it is asserted, "and the uses thereof in the block in which the plaintiffs' properties are located, . . . have either expressly violated building restrictions or have as previously indicated signed waivers and relinquishments of the building restrictions as to the plaintiffs' properties." We are not impressed that the situation here presented calls for application of the considerations referred to in the concurring opinion of Mr. Justice Traynor in *Fairchild* v. *Raines, supra.* No question of public policy is at present involved. The nature of the tract is settled as a residential area with a fringe of commercial property along Wilshire Boulevard. The question is whether the residential area shall be protected against further encroachment. The line must be drawn somewhere, and the trial court has drawn it by placing plaintiffs' properties within the restricted area. Conditions at some later date may warrant lifting the restrictions, but under the circumstances and evi-

dence considered by the trial judge, it cannot be held that his findings as of the time of trial are without substantial evidentiary support, and the discretion exercised by him ought not, except in case of clear abuse, be disturbed upon appeal. (*Downs* v. *Kroeger*, 200 Cal. 743 [254 P. 1101]; *Strong* v. *Hancock*, 201 Cal. 530, 551 [258 P. 60].)

The judgment is affirmed.

Doran, J., concurred.

Drapeau, J., did not participate herein.