(No. 14152.—Reversed and remanded.)

NICOLAUS H. HULTIN, Appellee, *v.* T. HENRY KLEIN *et al.* Appellants.

*Opinion filed December 22, 1921—Rehearing denied Feb. 9, 1922.*

1. BUILDING RESTRICTIONS—*what constitutes an "outbuilding."* An outbuilding is a distinct building which belongs to or is intended to be used with the dwelling house, and it must be appurtenant and appertain to the dwelling house or main building and must be subservient to it and contributory to the habitation.

2. SAME—*an outbuilding may be adjacent to and connected with the main building.* The fact that an outbuilding is separated from the main building only by the space of a common wall does not necessarily change its character as an outbuilding, and though it is,adjacent to the house and may be entered from the house through a passageway or through a door directly, it is still an outbuilding, if its use is not for the ordinary purpose of a dwelling but for some subsidiary purpose in connection with the dwelling.

3. SAME—*what determines whether a building is an outbuilding.* It is the character of the building and the use which is made of it which determine whether or not it is an outbuilding.

4. EASEMENTS—*when construction of greenhouses violates restriction against outbuildings and terminates easement.* Where a grantee is given an easement for a private alley over an adjacent

lot, subject to the condition stated in the grant that he is not to build on his own property any outbuilding within a certain distance from the boundary of his premises, the construction of ordinary greenhouses within the prohibited area, although they are used merely for the pleasure of raising flowers, is a violation of the restriction and terminates the easement, though one wall of the dwelling is used for a wall of the greenhouses.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

EDWARD J. KELLEY, for appellants.

ANDERSON & ANDERSON, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The question in this case is as to the existence of an easement for ingress and egress over a 12-foot strip of ground for the benefit of adjoining property. A bill in chancery was filed by the appellee to enjoin the defendants from interfering with the enjoyment of the easement, and after a hearing the court entered a decree granting the relief prayed for, from which the defendants appealed.

On March 18, 1869, Samuel B. Chase, through whom all the parties claim, made a deed conveying to Charles H. Cram the west 187 feet of lot 28 in Pine Grove, section 21, township 40, range 14, "together with the right to said Cram, his heirs and assigns forever, to use for the purpose of ingress and egress to said premises and to the south half of the west 187 feet of lot 27 in Pine Grove, and for no other purpose whatever, the 12 feet in width next east of and adjoining said west 187 feet of lot 28 and the south half of lot 27. Said Cram, for himself, his heirs and assigns, hereby covenanting and accepting this conveyance subject to the condition that neither he, they nor any of them shall place or allow to be placed within 115 feet of the south line of the east 60 feet in width, east and west, of said portion hereby conveyed of said lot 28, any shed, barn or other outhouse or outbuilding, and that a violation

of this condition shall have these effects: First, to subject the owner of that part of said described premises whereon such shed, barn, outhouse or outbuilding shall be placed, to the payment of $10 for each and every day the same shall be allowed to remain in violation of this agreement, the same to be paid to the owner of the land (at such time owning the same) lying next east of and adjoining said strip of land 12 feet wide; and second, that the uses of said alley right shall upon the violation of this agreement forever cease as to the owner or owners so violating this agreement and all persons who may afterwards own or have any interest in that part of said premises owned by him, her or them, the right to use said private alley, as aforesaid, to run with said above conveyed land as appurtenant thereof."

On August 1, 1870, Chase conveyed the 112 feet immediately east of the west 187 feet which had been conveyed to Cram to William M. Blackburn, reserving "a right of way over the west 12 feet in width in lot 28 hereby conveyed, and also reserving and making this conveyance subject to such right of way and of use over 12 feet in width as was granted to C. H. Cram." On August 10, 1889, Blackburn conveyed the property so conveyed to him to Henry P. Klein, subject to such rights of the use for purposes of ingress and egress of the west 12 feet in width of the premises described as were reserved or granted by Chase to Cram. At the time of this latter conveyance William H. Chadwick had acquired title to the Cram property. In 1891 or 1893 he erected an apartment building and a dwelling house on this property, the dwelling house being east of the apartment house. He also erected on the east side of his dwelling four greenhouses, which covered substantially that part of the premises east of the house, leaving only a narrow passageway of about three feet east of the greenhouses. There were four of the greenhouses, two extending east and west, which were connected by two ex-

tending north and south.  They were attached to the house, and there was an entrance to them from the house and also from the outside.  The house was built of brick with a stone front, and the greenhouses were built with wooden walls about three feet high.  The roofs were of glass.  The front of the most southerly of the greenhouses was about 25 feet from the front of the lot.  When Chadwick built his house and greenhouses he also built a fence on the east line of the west 187 feet of the lot, extending all the way through from the street the full length of the lot.  When Klein took possession of his premises he built a barn on the northwest corner.  He had some disagreement with Chadwick and Schoeninger, who owned the property north of Klein's, in regard to the use of the alley and the location of this barn which Klein started to build, covering the west 12 feet of his premises.  It was actually constructed with the west side of the barn 12 feet east of the west line of Klein's property, leaving the 12 feet clear.  There was at one time a 12-foot gate extending from the northwest corner of the barn to the west side of the lot.  There is a dispute in the evidence as to whether the gate was kept closed and locked or not.  As long as Chadwick continued to live on the premises he made no attempt to make use of the right of way, except that coal was sometimes delivered at the back part of Chadwick's lot by teams coming from the north through an alley which was there and backing down over the north few feet of the 12-foot strip, where the coal was unloaded on Chadwick's premises and the teams returned as they had come in.  Chadwick was adjudicated a bankrupt, the property was conveyed to his trustee in bankruptcy, and on April 10, 1912, by *mesne* conveyances the title to the east 37 feet of the south 143 feet of the tract became vested in the complainant.

The appellants insist that the chancellor erred in finding that the appellee and all of his grantors had always observed the covenants and conditions contained in the deed

301—7

from Chase to Cram; in not finding that the erection of
the greenhouses was a breach of the condition against plac-
ing within 115 feet of the south line of the east 60 feet
of the premises any shed, barn or other outhouse or out-
building and terminated the easement of a right of way
over the west 12 feet of the appellants' property; and in
not finding that the complainant was barred from main-
taining his bill by twenty years' adverse possession of the
defendants.

The property in controversy is situated on the north
side of Belmont avenue. The property conveyed to Cram
was bounded on the west by Evanston avenue, which is
now known as Broadway. Further north was Melrose ave-
nue, which bounded the block on the north. From Mel-
rose avenue an alley extended south through the middle
of the block to the northwest corner of the Klein property
and then at right angles east. This alley would have formed
with the 12-foot strip in controversy, if the latter had been
open, an alley through the block from Melrose avenue to
Belmont avenue. When Klein took possession of the prop-
erty he put the 12-foot strip in controversy in grass, a
flower bed extended along the fence, an arch was erected
the west side of which rested on the west nine feet of the
12-foot strip, and the driveway which entered through the
arch occupied only the east three feet of the extreme south
end of the 12-foot strip, going off then to the northeast to
Klein's barn. As has been said, neither Chadwick nor his
successors ever attempted to make any use of the right of
way, so far as appears, except in respect to the hauling
in of coal which has been mentioned, until the complainant
acquired title. Soon afterward he filed a bill to enforce
the easement, which for some reason was permitted to be
dismissed for want of prosecution in 1915, and this bill
was afterward filed and brought to a hearing in 1920.

There was some evidence of teams going through from
Melrose avenue to Belmont avenue, coming down the alley

in the north half of the block and going through the 12-foot strip west of Klein's barn, then turning to the left and using Klein's driveway down to Belmont avenue. But for the greater part of the way this was not a use of the 12-foot strip, and it was not a use of the easement because the teams thus going through from Melrose avenue to Belmont avenue were not connected in any way with the easement. We do not regard it as necessary, however, to discuss the evidence in regard to the abandonment of the easement or its loss by adverse possession. The deed by which the easement was created contained a plain provision that the permitting of any shed, barn or other outhouse or outbuilding on the south 115 feet of the east 60 feet of the premises should terminate the easement. If the greenhouses were outbuildings the easement was terminated by their erection, and it is our judgment that they were outbuildings.

Outhouses are defined by Bouvier as "buildings adjoining or belonging to dwelling houses; buildings subservient to yet distinct from the principal mansion house, located either within or without the curtilage." The definition as given by the Standard Dictionary is: "a smaller building standing apart from but appertaining to a main or larger building or dwelling;" and an outbuilding is "a smaller building appurtenant to a main building and generally separate from it." Webster's New International Dictionary has these definitions: Outhouse: "a small house or building at a little distance from the main house; an outbuilding." Outbuilding: "a building separate from and subordinate to the main house; an outhouse." The Century Dictionary defines an outhouse as a "small house or building separate from the main building; an outhouse, specifically in law under the definition of arson, a building contributory to habitation separate from the main structure, and so by the common law rules a parcel of the dwelling house or not, according as it was within or without

the curtilage." At common law the curtilage was the land with the castle and outhouses, enclosed often with high walls, where the old barons sometimes held court in the open air, from which comes the word "courtyard." (*Coddington* v. *Dry Dock Co.* 31 N. J. L. 485.) The term is descriptive of the common arrangement of dwellings, and the yards surrounding them, in England, but is not applicable to the common description of enclosures and buildings constituting the homestead of the inhabitants of this country. In England dwellings and outhouses of all kinds are usually surrounded by a fence or stone wall enclosing a small piece of land embracing the yards and outbuildings near the house, constituting what is called the court. Such precautionary arrangements have not been necessary in this country. *People* v. *Taylor,* 2 Mich. 251.

The question of curtilage is of no importance in this case. It was important at common law because the protection and privilege of the mansion house extended to all its branches and appurtenances within the curtilage, and if a barn, stable or warehouse were parcel of the mansion house and within the same common fence, though not under the same roof or contiguous, a burglary might be committed therein, otherwise not. (4 Blackstone's Com. 225.) An outbuilding must be appurtenant and appertain to the main building. Though distinct from the main building it must be subservient to it and contributory to the habitation. It must belong to or be intended to be used with the dwelling house. The principal argument of the appellee on the question whether the greenhouses were outbuildings is that they were erected at the same time with the house and were attached to it and could be entered from the house as well as from the outside. This does not affect the question. From the definitions which have been given it will be seen that an outbuilding is usually separate from the main building, but this does not necessarily imply removal to such a distance as to not be adjacent or abutting and in tangible

connection.   An outbuilding may be built a few feet or a
few inches, only, from the main house.   It may be con-
nected with the house by a covered passage.   If for con-
venience the covered passage is eliminated and the outbuild-
ing moved or originally constructed immediately against
the main building it would not therefore cease to be an
outbuilding.   If the outbuilding is separated from the main
house only by the space of a common wall this does not
necessarily change its character as an outbuilding.   It is
the character of the building and the use which is made
of it which determine whether or not it is an outbuilding.
Though it is adjacent to the house and may be entered from
the house through a passageway or through a door directly,
it is still an outhouse if its use is not for the ordinary
purpose of a dwelling but for some subsidiary purpose in
connection with the dwelling.   A wash-house, a woodshed,
a granary, a barn, may all be connected with the house so
that a person can pass from the house to one or all of the
outhouses mentioned without going from under the roof,
and yet they do not for that reason lose their character of
outhouses.   A greenhouse is a building covered chiefly with
glass, usually provided with artificial heat for the protection
and growth of exotic and other tender plants.   In this case
it appears that Chadwick did not engage in the raising of
flowers as a business but that his building of the green-
houses was merely for pleasure, and he took delight in the
raising of orchids and the giving of flowers to his neigh-
bors and friends.   The greenhouses were thus subservient
to his use of the main house as a dwelling but they were
entirely independent of the house.   They could be removed
without interfering with the rest of the building, and, in
fact, they have been removed.   If they had been built at a
distance of several yards from the house they would un-
doubtedly have been outbuildings, and the fact that one
wall of the house was used for a wall of the greenhouses
did not change the character of the structures from out-

buildings so as to make them a part of the dwelling house. In our judgment the construction of the greenhouses was a violation of the condition in the deed from Chase to Cram which terminated the easement, and the action of the parties is consistent with their assent to the same view.

The defendants are not entitled to any relief on their cross-bill, for it does not appear that any trespass on their premises is threatened.

The decree will be reversed and the cause will be remanded, with directions to the superior court to dismiss the bill and the cross-bill.

*Reversed and remanded, with directions.*