[Civ. No. 5952. First Appellate District, Division Two.—February 2, 1928.]

PAULINE RUPRECHT et al., Respondents, v. S. J. NICHOLSON, Appellant.

T. C. Gould and Louis G. Guernsey for Appellant.

Mitchell, Silberberg & Davis for Respondents.

NOURSE, J.—Plaintiffs sued to restrain defendant from erecting or maintaining upon defendant's premises buildings other than residences and outhouses permitted by the deeds of conveyance under which both parties held. Plaintiffs had judgment as prayed and defendant has appealed upon a bill of exceptions.

The covenant under which plaintiffs sued was included in all the deeds of conveyance to all the lots of a tract of land owned and subdivided by the common grantor. The provision which plaintiffs claimed was breached reads: "Buildings restricted to dwelling houses and the buyer shall not construct any dwelling house upon said tracts to cost less than $3,000.00 . . . provided that the buyer may erect a garage or other outbuildings, the same to be built and located at the proper point on said tract for such building." The complaint alleged that the defendant, disregarding this restriction, had erected on one of the lots purchased by him "unsightly chicken houses and barns for use in conducting a chicken ranch and ever since has maintained and operated said chicken houses and barns on said property in conducting a chicken ranch." The trial court found that this allegation was true; that the buildings were used only in the business of raising chickens for commercial purposes; that they were not appurtenant or subservient to a dwelling-house; and that they were not "outbuildings" within the meaning of the term as used in the deeds.

The crux of the case is the intention of the parties as expressed in the proviso in the deeds permitting the erection of outbuildings upon the premises. In approaching this question we should have in mind the admonition found in *McBride* v. *Freeman*, 191 Cal. 152, 156 [215 Pac. 678, 680], where it is said: "The intention of the parties should be 'determined by a fair interpretation of the grant or

reserve creating the easement' (citing cases). 'It seems to us that in all these cases it is better to get at the intention of the grantor from the language of the deed, interpreted in the light of the attending circumstances, than to conjecture the intent from the circumstances and then to make the language of the deed bend to that.' '' ▉ The real contention of the respondents in the present case is not that these chicken-houses are not outbuildings in the ordinary sense of the term, but that all the deeds should be construed as prohibiting the use of any portion of the premises for commercial purposes. The language of the deeds differs in this respect from the customary language of deeds or contracts containing stipulations reserving premises for residential purposes only and prohibiting the use of the premises for business purposes. The customary language is that the premises are to be ''used for residential purposes only''; that no part of the premises may be ''used for business purposes''; that the land ''is to be used for residential purposes only and that no apartment house, store or other place of business may be erected,'' or that ''the premises shall be used for residential purposes only; that no apartment house, flat, hotel or any building other than a first class private residence with the customary outbuildings shall be erected.'' Because of the uniformity of the use in similar deeds and contracts of these specific limitations of the premises to residential purposes, the failure of the deeds in suit to contain any limitation of that character adds to the uncertainty of the language used in these deeds. This being so it was incumbent upon the trial court to determine the meaning of the restriction in the light of the intention of the parties at the time the contract was made and for this purpose it was proper to receive evidence of the attending circumstances. This, however, was not done. When the appellant endeavored to show the surrounding circumstances as evidenced by the conditions of the locality in which the tract was situated the offer of proof was, upon objection of the respondents, rejected. Without any evidence of any character touching upon the circumstances surrounding the execution of the deeds the trial court determined, upon the face of the instruments alone, that it was intended to prohibit the erection of any building of any character upon the premises which might be used for com-

mercial purposes. The question which comes before us at this time is, therefore, one of law only—whether the trial court drew the proper conclusion of law from the face of the instrument itself.

The word outbuilding or outhouse has a well-known and defined meaning. The definition of an outbuilding as given by Century Dictionary is "A building near or subordinate to a main building"; of an outhouse is "A small house or building separate from the main house; an outbuilding; specifically, in law under the definition of arson a building contributory to habitation, separate from the main structure, and so by the common law rules a parcel of the dwelling house or not, according as it is within or without the curtilage." Bouvier defines outhouses as "buildings adjoining or belonging to dwelling houses." The term comes to us from the common law where the outhouses located within the walls or fences of the curtilage received the same consideration as the main building in criminal proceedings covering burglary and arson. It is said in *Hultin* v. *Klein,* 301 Ill. 94 [20 A. L. R. 230, 133 N. E. 660]: "The question of curtilage is of no importance in this case. It was important at common law because the protection and privilege of the mansion house extended to all its branches and appurtenances within the curtilage, and if a barn, stable, or warehouse were parcel of the mansion house, and within the same common fence, though not under the same roof or contiguous, a burglary might be committed therein; otherwise not. 4 Bl. Com. 225. An outbuilding must be appurtenant and appertain to the main building. Though distinct from the main building, it must be subservient to it, and contributory to the habitation. It must belong to or be intended to be used with the dwelling house." In those cases where the premises were inclosed within a manor wall or fence a barn, shed, stable, garage, greenhouse, chickenhouse, pigsty, storehouse, smokehouse, ice or meat house were all outhouses or outbuildings within the meaning of the term as applied to criminal proceedings for arson or burglary. ██ In this country, where the wall or fence is generally not used the determination of the question whether a certain building is an outbuilding or an outhouse usually depends upon its location upon the lot or tract of land upon which the residence house is situated and upon

the uses for which such building is to be put. Thus what might be an outbuilding or an outhouse upon a farm might not be an outbuilding upon a small city lot. Manifestly, upon a farm a stable for the care of horses, cows, and other stock, buildings for the housing of chickens, smokehouses for the curing of meat and storehouses for food or farm implements would all be outbuildings or outhouses in the ordinary use of the term, and their character as such would not be changed if the farmer should sell some of the produce of his farm.

In the present case it is in the evidence that the lot owners of this tract have uniformly constructed upon their lots chicken-houses for the purpose of raising chickens and it seems to have been the view of the trial court that these chicken-houses were outbuildings within the meaning of the deeds, but that because the appellant had constructed more of these buildings than was necessary to house chickens for his own personal use he had thereby violated the restrictions in the deeds. The finding was made that the buildings erected upon the other lots within the tract were not as obnoxious to the restrictions as are the buildings of the appellant and that the chicken-houses erected by the appellant were not outhouses within the meaning of the deeds because they were not appurtenant or subservient to a dwelling-house. In this same connection, however, it was found that the restrictions in the deeds were violated by the appellant in the erection and maintenance of the buildings upon his lot "other than the dwelling house, the garage and small chicken house or equipment sufficient to house and raise chickens for use only in connection with the use of the property for dwelling purposes and which are subservient to and appurtenant to the dwelling house." The judgment which followed upon these findings restrained the appellant from maintaining any of these buildings for commercial purposes and required him to remove from the premises all the buildings "except such portion of them as may be reasonably required for raising, housing or keeping chickens or poultry for domestic use only, but not in any manner for commercial purposes."

Conceding, as we must, that a barn, shed, or chicken-house located upon the lot is an outhouse of the main residence when used solely for the pleasure and subsistence of

the family the question arises: What do those buildings become when the head of the family sells or gives away milk from the cow or eggs from the chickens? The trial court put its stamp of approval upon the chicken-houses of one of the lot owners who had room for some fifty chickens and of another lot owner who was keeping five hundred or six hundred chickens, but it denounced the appellant's use of his buildings which were prepared for housing between two and three thousand. It certainly cannot be a question of degree as to how obnoxious the raising of chickens might be to one of the complaining lot owners whose right of action rests upon the covenants found in these deeds irrespective of any actual damage coming to him from any claimed breach. If it was intended by the parties that the grantees should be permitted to erect chicken-houses sufficient to house fifty or five hundred chickens, but no more, that restriction should have been inserted in the deeds. Any way we look at it, it is apparent that the interpretation placed upon the deeds by the trial court is not justified by the language of the deeds, but that to reach that interpretation it is necessary to read into the deeds a stipulation that the premises could not be used in any manner for commercial purposes and that the outbuildings permitted to be erected on the premises should be little ones. To reach such a construction of the deeds it is necessary to make a contract for the parties which they did not make themselves and which is not justified by the language employed.

We have said that the trial court did not receive any evidence of the surrounding circumstances upon which any light could have been thrown upon the intention of the parties as expressed in the language of the deeds. The appellant did offer evidence to show that the property was on the outskirts of the city of San Gabriel in a section surrounded by a sewer farm, a dairy and chicken ranches, and that the whole section was devoted to chicken raising and small suburban farms. This tender was refused by the trial court upon the ground that it was immaterial what was done in adjacent territory. This evidence was offered to prove the allegation in the answer "that said property is located in a country district upon the outskirts of an incorporated city and in a territory devoted to farming and poultry raising; that said property is not adapted for a

high-class residential section and has its greatest value in its use for the purpose of chicken raising and similar uses; that in the same section many large chicken ranches are located.'' We feel that the trial court erred in denying to appellant the right to prove these allegations. If a subdivision of this character were to be laid out on the outskirts of the well-known chicken raising city of Petaluma with no further restrictions than appear in these deeds it would take a queer process of judicial construction to interpret those restrictions as preventing the raising of chickens for commercial purposes. The fact, if it be a fact, that the tract was located in such a neighborhood would have been a circumstance attending the execution of the contracts which would have aided the court in determining the intention of the parties and in reaching an interpretation of the language of the deeds. The offer of proof was indefinite as to the time when these conditions existed and we are unable to tell whether appellant relied entirely upon the conditions existing when the subdivision was made or whether he sought to prove a change of conditions after the execution of the deeds. Under either theory the evidence was admissible: First, to show the character of the territory in which the subdivision was located as bearing upon the intention of the parties in the use of the term outbuilding in the deeds if this condition existed at the time the subdivision was made, and, second, if the condition was a result of changes ''in the uses to which property in the neighborhood was being put, so that such property is no longer residential property'' (*Miles* v. *Clark*, 44 Cal. App. 539, 549 [187 Pac. 167, 171]), the evidence was admissible upon the theory that because of this change in conditions it would be oppressive and inequitable to give effect to the restrictions. (*Downs* v. *Kroeger*, 200 Cal. 743 [254 Pac. 1101].)

It does appear that the subdivision was laid out in acre lots 137 feet wide by approximately 300 feet deep, that it was located ''nine miles from the County Court House,'' that it was advertised as a desirable location for suburban home places with ''fine soil—grows everything. Plenty of pure water. Cheaper than less desirable property much further out. Building restrictions assuring high class improvements,'' and that, while the lots were being offered for sale, a blackboard was displayed in front of the office of

the subdivider in the tract which carried the sign: "Suitable for chicken ranches." These are all "attending circumstances" bearing upon the question of the intention of the parties which they endeavored to express in the grant and they would seem sufficient to compel an interpretation of the deed contrary to that found by the trial court. But the fundamental error is that the appellant was not permitted to make proof of other circumstances which would have supported his construction of the deeds.

Judgment reversed.

Koford, P. J., and Sturtevant, J., concurred.