Filed 6/21/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LEONARDO CORONA,<br><br>        Petitioner,<br><br>v.<br><br>SUPERIOR COURT FOR THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Respondent;<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | A161369<br><br><br><br>(City and County of San Francisco Super. Court Nos. 233118 / 20008870) |

San Francisco police arrested Leonardo Corona after he entered a freestanding garage located on the same property as a house. The People charged him with first degree burglary, which applies to the burglary of "an inhabited dwelling house." (Pen. Code, § 460, subd. (a).)[1] Corona argues that an uninhabited outbuilding, such as a detached garage, is not an inhabited dwelling house. We agree. Corona's position is consistent with the text and history of the relevant statutes, over six decades of case law, and our Legislature's acquiescence in longstanding precedent.

---

[1] Undesignated statutory references are to the Penal Code.

1

## BACKGROUND

### A.

The garage at issue faces the street. The house is behind the garage. The garage is detached from the house; an unroofed courtyard separates the two structures. To access the house from the garage, a visitor must exit the garage, walk across the courtyard, and enter the house through a separate, locked door. A visitor could also access the house without passing through the garage by walking through a locked gate to the side of the garage. At the time of the incident, the garage contained two vehicles, laundry machines, and other items (e.g., a bicycle, camp chairs, a rolled up rug) belonging to the residents.

### B.

At the preliminary hearing, Corona argued that the first degree burglary charge is improper because the detached garage is not part of the house. Corona also made a motion under section 17, subdivision (b), requesting that the magistrate reduce the lesser included offense of second degree burglary to a misdemeanor. The magistrate concluded that the first degree burglary charge is supported by probable cause because "the garage was in fact part of the house." The magistrate did not rule on the section 17, subdivision (b) motion, reasoning that the first degree burglary charge could not be reduced to a misdemeanor.

After the People filed an information charging Corona with first degree residential burglary under section 459, Corona filed a motion under section 995 to set aside the burglary charge. He argued that there is insufficient evidence to support the first degree burglary charge because he entered an uninhabited, detached garage and that the magistrate denied him a substantial right by refusing to rule on his

2

section 17, subdivision (b) motion.  The superior court indicated that, if it were to set aside the first degree burglary charge, it would also set aside the lesser-included second degree burglary charge because "the case law is pretty clear it is a substantial right" to obtain a ruling on a section 17, subdivision (b) motion before the information is filed. However, the court denied Corona's motion to set aside the first degree burglary charge and did not rule on the section 17, subdivision (b) issue.

## C.

Corona filed the instant petition for writ of prohibition.  We have determined that Corona's motion below and his petition in this court were timely filed for purposes of obtaining writ review (§§ 999a, 1510) and that he presented facts persuasively demonstrating the necessity for writ review.  Given the novel issue presented and the likelihood that it would recur, we decided to address the issue in a published decision. Accordingly, we issued an order to show cause rather than an alternative writ because the latter procedure would have allowed the trial court to reverse the order, potentially making the issue moot. (*Paul Blanco's Good Car Co. Auto Group v. Superior Court* (2020) 56 Cal.App.5th 86, 98-99.)

### DISCUSSION

### A.

We agree with Corona that the burglary of an uninhabited outbuilding, such as a detached garage, is not first degree burglary. Our review is de novo.  (See *People v. Tran* (2015) 61 Cal.4th 1160, 1166 [statutory construction questions are reviewed de novo]; *People v. Watson* (1981) 30 Cal.3d 290, 300 [when facts are undisputed,

3

determination of probable cause to support an information is reviewed independently], disapproved on another ground by *People v. Sanchez* (2001) 24 Cal.4th 983, 991, fn. 3.)

**1.**

We first examine the language of the relevant statutes.

In the definition of burglary (§ 459), the Legislature listed "house" separately from outbuildings, indicating that the Legislature did not consider an outbuilding merely to be part of a house. "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." (§ 459.) The statute includes both "house" and common outbuildings like "barn" and "stable." (See *Ruprecht v. Nicholson* (1928) 88 Cal.App. 762, 765 (*Ruprecht*) [outbuildings commonly include barns, sheds, stables, storehouses, and garages].) The statute's reference to "outhouse" is particularly significant because it is a synonym for *outbuilding*. (*Ibid.* ["The definition of . . . an outhouse is, 'A small house or building separate from the main house; an outbuilding[.]' "]; see also *People v. Stickman* (1867) 34 Cal. 242, 244-245 (*Stickman*) [using the terms outhouse and outbuilding interchangeably].) Under section 459, Corona may have burgled the garage, but he did not burgle the house.[2]

---

[2] The statute's inclusion of "room" does not undercut our interpretation. Although a room can be part of a house, in an ordinary sense, this does not suggest that the Legislature intended an "outhouse" to be part of a "house" in section 459. Outhouses, like all the items on the list other than a "room," are standalone structures. (See § 459.) The Legislature included "room" to cover situations that

But section 460, which defines the degrees of burglary, adds a wrinkle to this analysis by using the peculiar term "inhabited dwelling house": "Every burglary of an *inhabited dwelling house*, vessel . . . which is inhabited and designed for habitation, floating home . . . or trailer coach . . . or the inhabited portion of any other building, is burglary of the first degree."  (§ 460, subd. (a), italics added.)  All other burglaries are second degree.  (§ 460, subd. (b).)  " '[I]nhabited' " means "being used for dwelling purposes, whether occupied or not."  (§ 459.) "Dwelling house" is not defined.

The People do not argue that the garage itself was inhabited. They argue that the dwelling house included both the house (which was undisputedly inhabited) and the garage.  So Corona's entry into the garage was a first degree burglary of an inhabited dwelling house.

Because the meaning of dwelling house is unclear, we consider the history of the burglary statutes.

**2.**

Under English common law, outbuildings were generally part of the associated residence—called a dwelling house or mansion house— provided they were within the curtilage.  As an early Supreme Court case explained: "The dwelling house . . . includes the privy, barn,

---

the list of structures would not cover.  (*People v. Garcia* (2016) 62 Cal.4th 1116, 1129 (*Garcia*).)  As our Supreme Court has explained, a burglar who formed the intent to burgle a room after he had already entered a building may be prosecuted for burglary (of the room) even if he lacked that intent when he entered the building.  (*Id.* at pp. 1129-1130.)  Also, a burglary of an interior room may be charged separately from a burglary of the rest of the building if the room is distinct from the building in a way that makes it similar in nature to the standalone structures listed in the statute—for example, separate stores in a mall or separate units of an apartment building (*id.* at pp. 1127-1128, 1129).

stables, cow houses, [and] dairy houses, if they are parcel of the messuage, though they are not under the same roof or joining contiguous to it. (1 Hale P.C. 558.) And when a burglary is committed in one of these outbuildings the indictment may charge the offense as done in the mansion house. (1 Hale P.C. 557.)" (*Stickman, supra,* 34 Cal. at p. 244.) The court observed, however, that this view was not universally accepted by American courts, some of which "limit[ed] the dwelling house to the building actually inhabited, to the exclusion of outhouses, though within the same inclosure." (*Id.* at pp. 244-245.) The court did not say which definition of dwelling house prevailed in California.

California's first burglary statute, enacted in 1850, applied to a "dwelling house" and also "any other house whatever." (Stats. 1850, ch. 99, § 58, p. 235; *Stickman, supra,* 34 Cal. at p. 245.) *Stickman* explained that "house" means " 'housed in,' " that is, any building with walls and a roof, regardless of its use. (*Stickman, supra,* 34 Cal. at p. 245.) Obviously, this could include outbuildings or any other standalone structures, but the statute did not specify whether a dwelling house includes outbuildings. In 1858, the Legislature replaced "dwelling house" with "any house, room, apartment or tenement" to clarify a point unrelated to our issue. (*Ibid.*; Stats. 1858, ch. 245, § 1, p. 206.)

Not long after, however, the Legislature enacted a housebreaking statute that listed both dwelling house and outbuildings separately, indicating that the term dwelling house does not include outbuildings. (Stats. 1864, ch. 114, §1, p.104 [prohibiting breaking and entering, in the daytime, of "any dwelling house, shop, warehouse, store, mill, barn,

6

stable, outhouse, or other building"]; see also 1872 Pen. Code, § 461 [defining housebreaking by reference to entering "any dwelling house, shop, warehouse, store, mill, barn, stable, outhouse, other building, vessel, or railroad car"].)  Likewise, in 1875, the Legislature expanded the list of structures in the definition of burglary so that it covered not only houses but also the same outbuildings included in both the housebreaking statute and the present section 459.  (Code Amends. 1875-1876, ch. 56, § 1, p. 111 [adding "shop, warehouse, store, mill, barn, stable, outhouse, or other building"].)

Thereafter, the term dwelling house did not reappear in the burglary statutes until 1923, when the Legislature added "inhabited dwelling house" to the first degree burglary statute, section 460. (Stats. 1923, ch. 362, § 1, p. 747 [defining first degree burglary to include "[e]very burglary of an inhabited dwelling house or building committed in the night time"].)  In the decades before and after the 1923 amendment, the Legislature periodically refined the text of the burglary statutes, but none of the changes sheds additional light on the meaning of dwelling house.[3]  The Legislature never defined the term, at least not in the burglary statutes.

---

[3] See 1872 Pen. Code, § 459 [defining burglary by reference to breaking and entering of "any house, room, apartment, or tenement, or any tent, vessel, water craft, or railroad car"]; Code Amends. 1875-1876, ch. 56, § 3, p. 112 [replacing housebreaking provision in 1872 Pen. Code, § 461 with a provision specifying the penalties for burglary]; Stats. 1913, ch. 144, § 1, p. 228 [extending burglary in section 459 to cover entering any "mine, or any underground portion thereof"]; Stats. 1947, ch. 1052,  § 1, p. 2452 [extending burglary in section 459 to cover entering a "trailer coach as defined by the Vehicle Code, vehicle as defined by said code when the doors of such vehicle are locked, [and]

But it *did* define "dwelling house" in a contemporaneous arson statute. This is significant because, historically, both arson and burglary laws used the term in a similar way. (See *Ruprecht, supra*, 88 Cal.App. at p. 765; see also *In re R.G.* (2019) 35 Cal.App.5th 141, 146

---

aircraft as defined by the Harbors and Navigation Code"]; Stats. 1955, ch. 941, § 1, p. 1827 [extending first degree burglary in section 460 to include burglary of a "trailer coach as defined by the Vehicle Code" in the nighttime]; Stats. 1976, ch. 1139, § 206.5, p. 5120 [revising definition of first degree burglary in section 460 to include only "[e]very burglary of an inhabited dwelling house, trailer coach as defined by the Vehicle Code, or building committed in the nighttime"]; Stats. 1977, ch. 690, § 3, p. 2220 [extending definition of burglary in section 459 to cover burglary of a "house car" and "inhabited camper," and adding a definition for the term " 'inhabited' " for purposes of the section]; Stats. 1978, ch. 579, § 22, p. 1985 [amending section 459 to make the definition of " 'inhabited ' " applicable to the entire chapter]; Stats. 1978, ch. 579, § 23, p. 1985 [amending section 460 to add burglary of "the inhabited portion of any other building" to the definition of first degree burglary]; Stats. 1982, ch. 1297, § 1, p. 4786 [amending section 460 to remove the requirement that the burglary be committed in the nighttime in order to constitute first degree burglary]; Stats. 1984, ch. 854, § 2, p. 2896 [extending definition of burglary in section 459 to include entering a "locked or sealed cargo container, whether or not mounted on a vehicle"]; Stats. 1987, ch. 344, § 1, p. 1455 [amending definition of burglary in section 459 to insert cross-references to statutory definitions for the terms "vessel" and "aircraft"; adding a last sentence clarifying when "[a] house, trailer, or portion of a building is currently being used for dwelling purposes"]; Stats. 1989, ch. 357, § 2, p. 1475 [adding the words "vessel designed for habitation" to the last sentence in section 459]; Stats. 1989, ch. 357, § 3, pp. 1475-1476 [extending first degree burglary in section 460 to include burglary of a "vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation"]; Stats. 1991, ch. 942, § 14, p. 4290 [extending definition of burglary in section 459 to include entering a floating home]; Stats. 1991, ch. 942, § 15, p. 4290 [extending definition of first degree burglary in section 460 to include burglary of a floating home, and making technical amendments].)

[courts presume the Legislature is " 'aware of existing related laws,' " and statutory language must be construed in the "context of related statutes, harmonizing them whenever possible"].)  Like the housebreaking statute discussed above, the first arson statute distinguished between a dwelling house and outbuildings, providing that "[e]very person who shall wilfully and maliciously burn, or cause to be burned, any dwelling house, kitchen, office, shop, barn, stable, storehouse, warehouse, or other building . . . shall be deemed guilty of arson."  (Stats. 1850, ch. 99,  § 56, pp. 234-235.)  In 1856, the Legislature defined "dwelling house" for arson purposes to include *attached* outbuildings and to exclude *detached* outbuildings:

> Every house, prison, jail, or other edifice, which shall have been usually occupied by persons lodging therein at night, shall be deemed a dwelling-house of any person so lodging therein; but no warehouse, barn, shed, or other out-house, unless used as a dormitory, shall be deemed a dwelling-house or part thereof  . . .  unless the same be joined to, and immediately connected with, a dwelling-house.

(Stats. 1856, ch. 110, § 6, p. 132.)  Thus, around the same time the Legislature first used the term in a burglary statute, it embraced the narrow version of a dwelling house and rejected the more expansive common law version that merged a house with its outbuildings.

Nothing in the subsequent history suggests that the Legislature reversed itself and adopted the expansive version of a dwelling house. In 1929, six years after the Legislature added "dwelling house" to the first degree burglary statute (Stats. 1923, ch. 362, § 1, p. 747), the Legislature enacted different punishments for arson of outbuildings in a statute that distinguished between outbuildings that were "parcel of a dwelling house" and those that were not.  (See Stats. 1929, ch. 25, § 1,

p. 46 [punishing the burning of any "dwelling house, or any kitchen, shop, barn, stable, or other outhouse that is parcel thereof, or belonging to or adjoining thereto"]; Stats. 1929, ch. 25, § 2, p. 46 [separately punishing the burning of "any barn, stable, garage, or other building . . . not a parcel of a dwelling house."].) On one hand, the Legislature equated arson of a house and its outbuildings by punishing them equally. But the more important lesson, for our purposes, is that the Legislature continued to use the term dwelling house to refer to a house, rather than both a house and its outbuildings.

In short, the statutory history favors Corona's position that the burglary of an uninhabited outbuilding is not first degree burglary of a dwelling house.

**3.**

The case law also favors Corona. For decades, courts have consistently held that first degree burglary may apply when a burglar enters a structure attached to a residence but does not apply when a burglar enters a detached, uninhabited structure.

In the leading case, *People v. Picaroni* (1955) 131 Cal.App.2d 612 (*Picaroni*), the court held that burglary of a detached garage was burglary in the second degree. (*Id.* at pp. 617-618.) The jury acquitted the defendant on a first degree burglary charge for burglary of the dwelling house but found him guilty on the second degree burglary charge for the detached garage. (*Id.* at pp. 613, 617-618.) The defendant raised a double jeopardy argument, contending that "the two counts of the information charged but one burglary," and "an acquittal on one count is a bar to a conviction on the other." (*Id.* at p. 617.) The court rejected this argument, holding that because "the entry of the

10

garage alone would not necessarily be an entry of the inhabited dwelling," the burglary of the detached garage was not the same offense as the burglary of the dwelling house. (*Id.* at p. 618.) In more than six decades since *Picaroni*, no court has questioned this holding.

Indeed, *Picaroni* is consistent with the many cases involving convictions for first degree burglary of structures that *are* physically attached to a dwelling house. For example, in *People v. Fox* (1997) 58 Cal.App.4th 1041 (*Fox*), which involved an attached garage, the court explained that, if the jury had concluded that the dwelling house was not inhabited or "the garage was not attached" to the residence, the jury "would have been obligated to find [the defendant] committed second degree burglary." (*Id.* at p. 1047; accord, *People v. Thorn* (2009) 176 Cal.App.4th 255, 268 (*Thorn*).)

Similarly, in *People v. Moreno* (1984) 158 Cal.App.3d 109 (*Moreno*), another attached garage case, the court explained that "because the fact of attachment was not contradicted, no evidence of second degree burglary was presented." (*Id.* at p. 113; see also *People v. Cruz* (1996) 13 Cal.4th 764, 776 (*Cruz*) [citing *Moreno* for proposition that burglary of "an attached garage not having an entrance into the house" is first degree burglary].)

In *People v. Cook* (1982) 135 Cal.App.3d 785 (*Cook*), the court rejected the defendant's argument that his burglary of an attached garage and enclosed patio did not constitute burglary of a "dwelling house," explaining that "[t]he problem with the argument . . . is that neither the garage nor the patio are separate structures." (*Id.* at p. 795.) Distinguishing *Picaroni* because it involved "an unattached garage not normally inhabited," *Cook* reasoned that "where the garage

11

is an attached and integral part of the house, it is simply one room of several which together compose the dwelling." (*Id.* at p. 796.)

The People largely ignore the distinction between attached and detached structures. Citing cases involving attached structures, they argue that a detached garage is part of a dwelling house if the two structures are physically close and functionally connected.

First, no case holds that first degree burglary applies to a garage or other outbuilding that is merely close to a house, not attached. The People rely on cases like *People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1107 (*Rodriguez*), in which the court stated that a structure must be " 'immediately contiguous' " to a house to be considered part of an inhabited dwelling. The court then offered several synonyms for contiguous: "adjacent, adjoining, nearby or close" and " 'touching or connected throughout.' " (*Ibid.*) The People seize on the word "close," but the more common definition is "touching" or "connected." (See Oxford English Dict. (2018) [defining "contiguous" to mean "[t]ouching, in actual contact, next in space; meeting at a common boundary, bordering, adjoining"].) In other words, attached. The point is academic, however, because the home office at issue in *Rodriguez* was attached to the house. (*Rodriguez, supra*, 77 Cal.App.4th at p. 1108; see also *id.* at p. 1110 [to be part of the residence, a structure must be "functionally related and structurally attached" to the residence].)

Second, the functional-connection inquiry serves a purpose in attached-structure cases that does not apply here. In attached-structure cases, the burglar entered a room that was physically attached to a residence but not obviously part of the living space, such as a garage with no connecting door to the house (*Moreno, supra*, 158

12

Cal.App.3d at p. 112), a laundry room within an apartment building (*People v. Woods* (1998) 65 Cal.App.4th 345, 347-348 (*Woods*)), a carport on the ground floor of an apartment building (*Thorn, supra,* 176 Cal.App.4th at p. 262), or a home office with a separate entrance. (*Rodriguez, supra,* 77 Cal.App.4th at pp. 1107-1108.)  The question in these cases is whether there is any reason to treat the room differently than any other room in the home.  (See, e.g., *Cook, supra,* 135 Cal.App.3d at pp. 795-796.)  Courts look for indications that the room was not only physically attached but also a functional part of the home's living space.  (See *ibid.*; *Woods, supra,* 65 Cal.App.4th at pp. 347-349.)  There may be reason to treat the attached room differently if, for example, the residents did not have access to their garage because they rented it to somebody else.  (Cf. *Garcia, supra,* 62 Cal.4th at p. 1128 [burglary of a leased room may be separate and distinct from the remaining parts of the building]; § 460, subd. (a) [limiting first degree burglary to "the inhabited portion of any other building"].)  Here, Corona never entered a room of the house.  The functional-connection test is irrelevant.

Finally, Corona's position is consistent with the policy underlying the first degree burglary statute.  Section 460 increases the punishment for burglary of *inhabited* structures, in recognition of the need for people to feel safe where they live and the increased danger of confrontation when an intruder enters that space.  (§ 460, subd. (a); see *Cruz, supra,* 13 Cal.4th at p. 775; *People v. Trevino* (2016) 1 Cal.App.5th 120, 125.)  Courts interpret section 460 broadly to apply to many different types of structures where people live, permanently or temporarily, including hotel rooms (*People v. Villalobos* (2006) 145

13

Cal.App.4th 310, 321), hospital rooms (*People v. Fond* (1999) 71 Cal.App.4th 127, 131), and second homes (*People v. Hines* (1989) 210 Cal.App.3d 945, 950, disapproved on another ground by *People v. Allen* (1999) 21 Cal.4th 846, 863-866 & fn. 21; see generally *Cruz*, supra*,* 13 Cal.4th at pp 776-777 [citing with approval cases that equate an "inhabited dwelling house" with a "residence" that people use as " 'sleeping quarters' "]). The People, quite rightly, do not argue that the garage was inhabited.

While there is certainly a danger that an intruder may provoke a confrontation with somebody in their own detached garage, the same could be said for an intrusion into any building where people may be present. All burglaries pose a danger of confrontation (*People v. Montoya* (1994) 7 Cal.4th 1027, 1043), but the Legislature reserved first degree burglary for inhabited structures. To be sure, the distinction can be razor-thin between an attached garage (particularly one with no connecting door) and a detached garage. But that is where the Legislature drew the line, and we are not at liberty to redraw it. (Cf. *People v. Chavez* (2012) 205 Cal.App.4th 1274, 1283 [declining to extend burglary to fenced, uncovered yards].)

**4.**

The Legislature has impliedly accepted the judicial construction of section 460. (See *People v. Ledesma* (1997) 16 Cal.4th 90, 100-101.) In the more than six decades since *Picaroni*, the Legislature has amended the statute on seven occasions, including in 1955, just months after *Picaroni* was decided. (See Stats. 1955, ch. 941, § 1, p. 1827; Stats. 1976, ch. 1139, § 206.5, p. 5120; Stats. 1978, ch. 579, § 23, p. 1985; Stats. 1982, ch. 1290, § 1, pp. 4774-4775; Stats. 1982, ch. 1297,

14

§ 1, p. 4786; Stats. 1989, ch. 357, § 3, pp. 1475-1476; Stats. 1991, ch. 942, § 15, p. 4290; see also *People v. Jackson* (1985) 37 Cal.3d 826, 830 fn.2 [discussing section 460 as amended between 1955 and 1982], disapproved on another ground by *People v. Guerrero* (1988) 44 Cal.3d 343, 348, 355-356; *Cruz, supra*, 13 Cal.4th at p. 770 & fn.3 [discussing 1978, 1982, 1989, and 1991 amendments].) We therefore presume that the Legislature was aware of, and has acquiesced in, the longstanding rule that burglary of an uninhabited, detached garage is not first degree burglary. (Cf. *People v. Sparks* (2002) 28 Cal.4th 71, 86-87 ["Although the burglary statute historically has been the subject of frequent amendments, our Legislature has not revised section 459 to disapprove any of these decisions" interpreting the meaning of the term "room"].)

Accordingly, Corona was committed without probable cause, and he is entitled to have the first degree burglary charge set aside under section 995, subdivision (a)(2)(B).

**B.**

Corona raises an additional contention that the magistrate denied him a substantial right in failing to rule on his motion pursuant to section 17, subdivision (b), to reduce the uncharged second degree burglary offense to a misdemeanor. (See *People v. Manning* (1982) 133 Cal.App.3d 159, 165-168; *Jackson v. Superior Court* (1980) 110 Cal.App.3d 174, 177-178.) The superior court did not reach this question because it erroneously concluded the first degree burglary charge was proper. Upon issuance of the remittitur, the superior court should proceed to address this question in the first instance. (See *Mannino v. Superior Court* (1983) 142 Cal.App.3d 776, 779.)

15

**DISPOSITION**

Let a peremptory writ of prohibition issue restraining respondent superior court from taking any action on the charge of first degree burglary except to dismiss it. In all other respects, the petition for writ of prohibition is denied.

_____

BURNS, J.

We concur:

_____

SIMONS, ACTING P.J.

_____

RODRIGUEZ, J.*

A161369

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

City and County of San Francisco Superior Court, Case Nos. 233118 / 20008870

Magistrate: Hon. Cecilia P. Castellanos
Trial Judge: Hon. Brendan Conroy

Manohar Raju, Public Defender, Matt Gonzalez, Chief Attorney, Herman J. Holland, III and Oliver Kroll, Deputy Public Defenders, San Francisco Public Defender's Office, for Petitioner

Chesa Boudin, District Attorney, Maria Shih, Assistant District Attorney, San Francisco District Attorney's Office, for Real Party in Interest